**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

No. 10-4474

GEORGE LAMONT MOORE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Martin K. Reidinger, District Judge.
(3:09-cr-00018-MR-1)

Argued: October 28, 2011

Decided: January 25, 2012

Before TRAXLER, Chief Judge, and MOTZ and AGEE,
Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by published
opinion. Judge Agee wrote the opinion, in which Chief Judge
Traxler and Judge Motz joined.

---

## COUNSEL

**ARGUED:** Matthew Segal, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Claire J. Rauscher, Executive Director, Peter S. Adolf, Assistant Federal Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, Charlotte, North Carolina, for Appellee.

---

## OPINION

AGEE, Circuit Judge:

Police officers searched convicted felon George Lamont Moore incident to an arrest and found a nine-millimeter handgun. After being indicted as a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), Moore moved to dismiss on the grounds that the statute violated his Second Amendment rights. The district court denied the motion and Moore entered a conditional guilty plea reserving the right to raise the Second Amendment defense on appeal. As part of Moore's sentence on the § 922(g)(1) conviction, the district court ordered that he repay the incurred court-appointed attorneys' fees pursuant to 18 U.S.C. § 3006A(f). For the reasons stated herein, we affirm the district court's denial of the motion to dismiss, but vacate the attorneys' fees order and remand for resentencing in part.

## I.

### Factual and Procedural Background

Prior to Moore's arrest in this case, he had prior felony convictions for selling or delivering cocaine, three common law robberies, and two assaults with a deadly weapon on a government official.[1] In the case at bar, Charlotte, North Carolina police arrested Moore on the street based on an outstanding warrant for assault with a deadly weapon. While searching Moore incident to this arrest, the officers found a nine-millimeter handgun and ammunition. Moore told the police after his arrest that he carried "the gun because of his fear of being robbed, such robberies being prevalent in the neighborhood in which he lived." J.A. 17.[2] He was then charged as a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), and as an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).[3]

---

[1]Moore's criminal record is extensive, resulting in a total of 19 criminal history points as reflected in his Presentence Investigation Report. In addition to his felony convictions, he has numerous additional non-felony convictions as an adult including assault, assault and battery, assault on a government official, second-degree trespass, carrying a concealed gun, and various drug and driving-related offenses. In total, he has been convicted of more than twenty offenses and arrested more than twenty other times for charges that did not lead to convictions, generally because they were dismissed.

[2]Although the government does not point to any evidence contradicting Moore's claim that he carried the gun to protect himself, it contends on brief that there is "no competent evidence in the record" to support the assertion, other than Moore's own statement to the police at the time of his arrest. Br. of Appellee at 12 n.2.

[3]In pertinent part, 18 U.S.C. § 922(g)(1) provides: "It shall be unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition . . . ." We use the term felon in possession of a firearm as a shorthand designation of a person in violation of § 922(g)(1).

Moore filed a motion to dismiss on various constitutional grounds, which the district court denied. At that point, Moore entered a conditional guilty plea, preserving for appeal the issue of whether § 922(g)(1) violates the Second Amendment in light of the Supreme Court's ruling in *District of Columbia v. Heller*, 554 U.S. 570 (2008).

The district court sentenced Moore under the ACCA to the statutory minimum, fifteen years' imprisonment, to be followed by three years of supervised release. Although the court found that Moore was indigent and qualified for a court-appointed attorney under 18 U.S.C. § 3006A and that he could not pay a fine or interest, it nonetheless ordered Moore to reimburse the United States for the court-appointed attorneys' fees at a rate of $50 per month beginning sixty days after his release from prison. The district court adopted the probation office's recommendation that, because Moore has a GED and some trade skills, he would be able to pay the $50 per month after his release. Moore objected to the fee reimbursement order.

On appeal, Moore assigns error both to imposition of the attorneys' fee reimbursement and the underlying § 922(g)(1) conviction. We have jurisdiction of this appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

### Second Amendment Claim

### A.

We first consider, *de novo*, whether Moore's conviction under § 922(g)(1) violates the Second Amendment.[4] *See United States v. Bostic*, 168 F.3d 718, 721 (4th Cir. 1999).

---

[4]"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II.

Moore argues that the Supreme Court held in *Heller* that the Second Amendment guarantees an individual the right to bear arms in self-defense irrespective of his status as a convicted felon. Moore contends that § 922(g)(1) is unconstitutional on its face because it infringes on the basic right of self-defense.[5] As applied to him, Moore also argues that the statute is unconstitutional and that his "prior convictions should not be deemed to disqualify him from exercising his Second Amendment right to protect himself." Br. of Appellant at 12. Alternatively, Moore asks for remand to the district court to develop an evidentiary record, arguing that procedure is required by this court's decision in *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010).

In response, the government contends that the Second Amendment right to bear arms, like all other constitutional rights, is not absolute. Emphasizing the violent nature of Moore's criminal record, the government points to language in *Heller* characterizing felon dispossession laws as presumptively lawful. *See Heller*, 554 U.S. at 626-27 & n.26 (identifying the "longstanding prohibition[ ] on the possession of firearms by felons" as a "presumptively lawful regulatory measure[ ]"). Based on this language, the government posits that Moore's challenges to § 922(g)(1), as facially invalid, fail. As to Moore's as-applied challenge, the government argues that if the Congress has sufficient interest in prohibiting any person from possessing a firearm, it is a person like Moore, a violent felon.

### B.

We begin our analysis by noting the unanimous result

---

[5]Although Moore's brief is not entirely clear as to whether he is asserting a facial challenge to the validity of § 922(g)(1), in addition to his as-applied challenge, we conclude that the arguments in his brief are sufficiently broad to constitute a facial challenge, and so we address both arguments.

reached by every court of appeals that § 922(g)(1) is constitutional, both on its face and as applied. The basis for the various decisions by our sister circuits has varied, but all have uniformly rejected challenges to § 922(g)(1), usually based at least in part on the "presumptively lawful" language from *Heller*. *See, e.g.*, *United States v. Torres-Rosario*, 658 F.3d 110, 113 & n.1 (1st Cir. 2011) (rejecting both facial and as-applied challenges to § 922(g)(1) based on *Heller* and noting that "[a]ll of the circuits to face the issue post *Heller* have rejected blanket challenges to felon in possession laws" and citing cases from the Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits); *United States v. Barton*, 633 F.3d 168, 170–75 (3d Cir. 2011) (rejecting Second Amendment challenge to § 922(g)(1) because of "presumptively lawful" language); *United States v. Rozier*, 598 F.3d 768, 770–71 (11th Cir.), *cert. denied*, 130 S. Ct. 3399 (2010) (same); *United States v. Williams*, 616 F.3d 685, 691–94 (7th Cir.), *cert. denied*, 131 S. Ct. 805 (2010) (rejecting facial Second Amendment challenge to § 922(g)(1) based on presumptively lawful regulations, and utilizing the intermediate scrutiny framework to address the defendant's as-applied challenge "without determining that it would be the precise test applicable to all challenges to gun restrictions"); *United States v. Vongxay*, 594 F.3d 1111, 1114–15 (9th Cir.), *cert. denied*, 131 S. Ct. 294 (2010) (relying on *Heller* to conclude that "felons are categorically different from the individuals who have a fundamental right to bear arms"); *United States v. Khami*, 362 F. App'x. 501, 507-08 (6th Cir.), *cert. denied*, 130 S. Ct. 3345 (2010) (agreeing with other circuits that *Heller*'s language "is sufficient to dispose of the claim that § 922(g)(1) is unconstitutional"); *United States v. McCane*, 573 F.3d 1037, 1047 (10th Cir. 2009), *cert. denied*, 130 S. Ct. 1686 (2010) (flatly rejecting Second Amendment challenge to § 922(g)(1) based on *Heller*); *United States v. Anderson*, 559 F.3d 348, 352 n.6 (5th Cir.), *cert. denied*, 129 S. Ct. 2814 (2009) (same); *United States v. Stuckey*, 317 F. App'x. 48, 50 (2d Cir. 2009) (same); *see also United States v. Joos*, 638 F.3d 581, 586 (8th Cir. 2011) (rejecting a facial

challenge to § 922(g)(1) and citing to a prior Eighth Circuit decision, which relied on *Heller* to reject a facial challenge to § 922(g)(3)). Apparently we are one of the few circuits yet to publish an opinion on this issue. We now join with our sister courts and hold § 922(g)(1) to be a constitutionally valid statute.

Since the Supreme Court's decision in *Heller*, we have come to address claims of the constitutional invalidity of a firearms possession statute under the framework set out in *Chester*. *See United States v. Staten*, ___ F.3d ___, 2011 WL 6016976 (4th Cir. Dec. 5, 2011) (§ 922(g)(9)); *United States v. Chapman*, ___ F.3d ___, 2012 WL 11235 (4th Cir. Jan. 4, 2011) (§ 922(g)(8)). These cases, unlike the case at bar, challenged statutory restrictions on domestic violence misdemeanants (*Chester* and *Staten*), and certain persons subject to domestic violence protective orders (*Chapman*) which the Supreme Court did not specifically identify as presumptively lawful regulatory measures in *Heller*. Our analysis in those cases thus had no reason to denote any specific difference in analysis between firearms restrictions which were specifically mentioned in *Heller* as presumptively lawful regulatory measures and those that were not.

As we noted in *Chester*, the Supreme Court explicitly stated in *Heller* that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons. . . ." 628 F.3d at 679 (citing *Heller*, [554 U.S. at 626])). The Supreme Court further identified such felon in possession laws, like § 922(g)(1), as "presumptively lawful regulatory measures." *Heller*, 554 U.S. at 626-27, n.26. We believe this differentiation by the Supreme Court has some impact on the Second Amendment *Chester* analysis when the regulatory measure at issue is such an identified presumptively lawful regulatory measure. In effect, the *Chester* analysis is more streamlined when a presumptively lawful regulatory measure is under review.

To the extent that Moore, or any similarly situated defendant, raises a facial challenge to the validity of § 922(g)(1), the clear declaration in *Heller* that such felon in possession laws are a presumptively lawful regulatory measure resolves that challenge fairly quickly. As we noted in *Chester*:

> It is unclear to us whether *Heller* was suggesting that "longstanding prohibitions" such as these [firearm possession by felons] were historically understood to be valid limitations on the right to bear arms or did not violate the Second Amendment for some other reason.

*Id.* at 679.[6] We then referenced a similar conclusion by the Third Circuit in *United States v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010):

---

[6]We further observed in *Chester* that

it appears to us that the historical data is not conclusive on the question of whether the founding era understanding was that the Second Amendment did not apply to felons. *See Williams*, 616 F.3d at 692 (noting that "[t]he academic writing on the subject of whether felons were excluded from firearm possession at the time of the founding is inconclusive at best" (internal quotation marks omitted)); [*United States v.* ]*Skoien*, 614 F.3d [638, 650-51 (7th Cir. 2010) (en banc)] (Sykes, J., dissenting) ("[S]cholars disagree about the extent to which *felons*-let alone misdemeanants-were considered excluded from the right to bear arms during the founding era. . . . We simply cannot say with any certainty that persons convicted of a domestic-violence misdemeanor are wholly excluded from the Second Amendment right as originally understood."). *United States v. McCane*, 573 F.3d 1037, 1048 (10th Cir. 2009) (Tymkovich, J., concurring) ("[T]he felon dispossession dictum may lack the 'longstanding' historical basis that *Heller* ascribes to it. Indeed, the scope of what *Heller* describes as 'longstanding prohibitions on the possession of firearms by felons' . . . is far from clear.").

628 F.3d at 680-81.

> We recognize the phrase 'presumptively lawful' could have different meanings under newly enunciated Second Amendment doctrine. On the one hand, this language could be read to suggest the identified restrictions are presumptively lawful because they regulate conduct outside the scope of the Second Amendment. On the other hand, it may suggest the restrictions are presumptively lawful because they pass muster under any standard of scrutiny.

*Chester*, 628 F.3d at 679.

Whichever meaning the Supreme Court had in mind negates a facial challenge to a felon in possession statute like § 922(g)(1). If such restrictions were outside the scope of Second Amendment coverage at ratification, then obviously it is not within Second Amendment protection now. On the other hand, if a § 922(g)(1)-type statute has some Second Amendment coverage, the fact it is "presumptively lawful" indicates it must "pass muster under any standard of scrutiny." Under the well recognized standard for assessing a facial challenge to the constitutionality of a statute, the Supreme Court has long declared that a statute cannot be held unconstitutional if it has constitutional application. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) ("[A] facial challenge must fail where the statute has a 'plainly legitimate sweep.'") (quoting *Washington v. Glucksberg*, 521 U.S. 702, 739-40 & n.7 (1997) (Stevens, J., concurring in judgments)); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid"). Since clearly there are cases where felon firearm possession is constitutionally limited, § 922(g)(1) survives a facial challenge. *See Wash. State Grange*, 552 U.S. at 449. Thus, we have no difficulty in concluding that § 922(g)(1) is constitutionally valid on its face.

Determining that § 922(g)(1) is valid on its face, however, does not resolve Moore's as-applied challenge. As we recognized in *Chester*, *Heller* seemed to leave this issue open. "In fact, the phrase '*presumptively* lawful regulatory measures' suggests the possibility that one or more of these 'longstanding' regulations 'could be unconstitutional in the face of an as-applied challenge.' *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010)." 628 F.3d at 679 (emphasis in *Chester*).

In asserting his as–applied challenge, of course, Moore cannot "obtain relief based on arguments that a differently situated person might present," *United States v. Skoien*, 614 F.3d 638, 645 (7th Cir. 2010) (en banc), or based on "other situations not before the Court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610 (1973). Moreover, the Supreme Court's declaration in *Heller* that felon in possession statutes are "presumptively lawful regulatory measures" reinforces the fact that a litigant claiming an otherwise constitutional enactment is invalid as applied to him must show that his factual circumstances remove his challenge from the realm of ordinary challenges.

Moore's as-applied challenge relies heavily on his assertion that he was carrying a firearm on the day he was arrested to protect himself from being robbed in his sketchy neighborhood. He contends that the conduct underlying his conviction thus implicates the core right of the Second Amendment: the right of a "*law-abiding, responsible* citizen to possess and carry a weapon for self-defense." *Chester*, 628 F.3d at 683 (citing *Heller*, [554 U.S. at 635](emphasis in *Chester*)).

We cannot agree with Moore's argument that, because he was carrying the weapon for protection,[7] his conduct was

---

[7]We also need not to decide in this case whether the right of self-defense outside the home, where Moore was arrested, is part of the "central component" of the Second Amendment. *See United States v. Masciandaro*, 638 F.3d 458, 467 (4th Cir. 2011) (noting that "a considerable degree of uncertainty remains as to the scope of that right beyond the home"). The resolution of this discrete issue is unnecessary to the analysis in this case for the reasons given herein.

therefore absolutely protected by the Second Amendment. Moore simply does not fall within the category of citizens to which the *Heller* court ascribed the Second Amendment protection of "the right of *law-abiding responsible* citizens to use arms in defense of hearth and home." 554 U.S. at 635 (emphasis added). However the Supreme Court may come to define a "law-abiding responsible citizen" for Second Amendment purposes, Moore surely would not fall within that group. Most notably, Moore's three prior felony convictions for common law robbery and two prior convictions for assault with a deadly weapon on a government official clearly demonstrate that he is far from a law-abiding, responsible citizen. *Cf. Chester*, 628 F.3d at 683; *see also supra* note 1 (summarizing Moore's extensive criminal history).

Indeed, Moore acknowledges that his argument is "weaken[ed]" by his "prior convictions, including several convictions for assaults and robberies." Br. of Appellant at 11. Particularly in light of his extensive and violent criminal history, Moore's conduct here is plainly outside the scope of the Second Amendment. *See, e.g.*, *Torres-Rosario*, 658 F.3d at 113 (rejecting an as-applied challenge to § 922(g)(1) by a convicted felon with no violent felony convictions, and concluding that his two prior serious drug convictions were sufficient to support the ban against his possession of firearms, especially in light of the established connection between drug dealing and violence); *Williams*, 616 F.3d at 693 ("Williams, as a violent felon, is not the ideal candidate to challenge the constitutionality of § 922(g)(1)."); *Barton*, 633 F.3d at 175 ("18 U.S.C. § 922(g)(1) is . . . constitutional as applied to Barton because he has presented no facts distinguishing his circumstances from those of other felons who are categorically unprotected by the Second Amendment.") In short, Moore has presented nothing to rebut the presumptive lawfulness of § 922(g)(1) as applied to him.

We do not foreclose the possibility that a case might exist in which an as-applied Second Amendment challenge to

§ 922(g)(1) could succeed. But while we acknowledge such a showing theoretically could be made, *Moore* is not remotely close. As we just noted, Moore undoubtedly flunks the "law-abiding responsible citizen" requirement. Moreover, Moore's proffered reason for possessing a firearm, "his fear of being robbed, such robberies being prevalent in the neighborhood in which he lived" is far too vague and unsubstantiated to remove his case from the typical felon in possession case. Accordingly, Moore has not rebutted the presumption that the presumptively lawful regulatory measure of the long standing prohibition on felon firearm possession is unconstitutional as applied to him.

Therefore, we hold that § 922(g)(1) is constitutional as applied to Moore and the district court did not err in denying Moore's motion to dismiss.

III.

Reimbursement of Attorneys' Fees

A.

We next consider whether the district court erred in ordering Moore to repay his court-appointed attorneys' fees under 18 U.S.C. § 3006A. The interpretation of a statute, like the meaning of § 3006A(c) and (f) in the case at bar, is reviewed *de novo*. *United States v. Weaver*, 659 F.3d 353, 356 (4th Cir. 2011) ("[An] issue of statutory interpretation is one that we review *de novo*.") (citation omitted). In the context of sentencing, we review the district court's legal determinations *de novo*, and its factual findings for clear error. *United States v. Osborne*, 514 F.3d 377, 387 (4th Cir. 2008). In reviewing the district court's application of the factual findings, as in the reimbursement order here, we apply an abuse of discretion standard. *See, e.g.*, *United States v. Holman*, 532 F.3d 284, 288 (4th Cir. 2008) (conditions of supervised release are reviewed for an abuse of discretion); *cf. United States v. Left-*

*wich*, 628 F.3d 665, 667 (4th Cir. 2010) (district court's resti-tution order is reviewed for abuse of discretion). In actual practice, this division of standards of review is not always easy to differentiate and is of limited practical import where the district court commits an error as a matter of law.[8] The district court made such an error in this case which requires the sentencing order, as it relates to the attorney fee reim-bursement, be vacated and remanded.

B.

The Criminal Justice Act, 18 U.S.C. § 3006A ("CJA"), requires the government to provide adequate legal representa-tion for criminal defendants unable to pay for such services when, like Moore, they are charged with a federal felony offense. 18 U.S.C. § 3006A(a)(1)(A). There is no issue in this case that Moore was, in fact, indigent and qualified for a court appointed attorney under the CJA.

That statute also provides that "[i]f, at any time after the appointment of counsel . . . the court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may . . . authorize payment as pro-vided in subsection (f), as the interests of justice may dictate." 18 U.S.C. § 3006A(c). Subsection (f) further authorizes a court to order repayment of attorneys' fees under certain cir-cumstances:

> Whenever . . . the court finds that funds are available
> for payment from or on behalf of a person furnished
> representation, it may authorize or direct that such

---

[8]*See Koon v. United States*, 518 U.S. 81, 100 (1996) ("Little turns, how-ever, on whether we label review of this particular question abuse of dis-cretion or *de novo*, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction. A district court by defini-tion abuses its discretion when it makes an error of law.") (internal cita-tions omitted).

> funds be paid to the appointed attorney . . . or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section.

18 U.S.C. § 3006A(f).

Moore argues that the order requiring him to repay his attorneys' fees during his supervised release term is unlawful because § 3006A(f) only allows a court to order reimbursement when it determines the defendant has funds that are *currently* available for payment. He points to the use of the present tense ("funds are available") in the statute's language to support that argument, as well as to out-of-circuit authority. Because the district court's order was based on a speculative ability to pay in the future, Moore argues that the order violates § 3006(A)(f).

The government concedes that, in this circuit, there are no published cases upholding a reimbursement order based on future payments from assets not currently accessible. It relies on two unpublished cases, however, which upheld such forward-looking reimbursement orders. *See United States v. Jackson*, 1998 WL 386109 (4th Cir. June 19, 1998) (unpublished); *United States v. Moore*, 1998 WL 85296 (4th Cir. Mar. 2, 1998) (unpublished). In neither of these cases was there an explicit finding that funds were then available to the defendant for a reimbursement payment. The government also argues that forward-looking reimbursement orders are authorized because the CJA generally vests significant discretion in district courts for sentencing purposes. Thus, the government concludes, the order here should not be overturned.

In analyzing the district court's order, we start with the plain language of the statute. *Weaver*, 659 F.3d at 356 ("The starting point for any issue of statutory interpretation is the language of the statute itself. It is well established that when the statute's language is plain, the sole function of the courts

. . . is to enforce it according to its terms.") (citations and quotation marks omitted). In the case at bar, subsection (f) allows the recovery of the cost of court-appointed attorneys' fees if "the court finds" that "funds are available for payment from or on behalf of a person being furnished representation." 18 U.S.C. § 3006A(f). When read in conjunction with subsection (c), then, which authorizes repayment under subsection (f) after "the court finds that the person is financially able . . . to make partial payment for the representation," the statute clearly requires a *finding* of a defendant's ability to make payments as a condition precedent to an order of reimbursement. Any such finding must be based on evidence before the court, and thus in the record, and not on speculation or hypothesis. Given the statute's plain language, then, we are compelled to hold that the district court must base the reimbursement order on a finding that there are specific funds, assets, or asset streams (or the fixed right to those funds, assets or asset streams) that are (1) identified by the court and (2) available to the defendant for the repayment of the court-appointed attorneys' fees.

Our holding requiring a specific finding of ability to pay and identification of the source of payment is in accord with similar conclusions of our sister circuits. *See, e.g.*, *United States v. Wilson*, 597 F.3d 353, 358 (6th Cir. 2010) ("A thorough inquiry into the defendant's finances, though not a full adversarial hearing, should precede" any order requiring a repayment of attorneys' fees); *United States v. Danielson*, 325 F.3d 1054, 1076-77 (9th Cir. 2003) (affirming order denying reimbursement of fees where district court could not "make any definitive finding as to [the defendant's] ability to pay"); *United States v. McGiffen*, 267 F.3d 581, 589 (7th Cir. 2001) ("requir[ing] that a district court make appropriate findings of availability[,]" such as "whether the contribution would impose an extreme hardship on the defendant, whether it would interfere with his obligations to his family, and whether there were third parties with valid claims to the funds[,]" and noting that "[o]ur sister circuits similarly require that there be

evidence that the district court made specific inquiries into the defendant's financial circumstances and obligations" before requiring a defendant to repay funds pursuant to § 3006A(f)); *United States v. Evans*, 155 F.3d 245, 252 n.8 (3d Cir. 1998) (before entering a reimbursement order, a district court has a "responsibility to inquire into the defendant's current financial status"); *United States v. Fraza*, 106 F.3d 1050, 1056 (1st Cir. 1997) (reversing order of reimbursement where the district court failed to make findings as to defendant's "financial viability").[9]

The Sixth Circuit's decision in *Wilson* is a case in which the district court made the required CJA findings. In *Wilson*, the defendant was ordered to repay $52,305 in attorneys' fees after his acquittal, having received free representation throughout his criminal proceedings, including a six-week trial. 597 F.3d at 355-56. Although the defendant had received free court-appointed representation, the court subsequently learned that Wilson had significant assets at the time of trial. The repayment was based on specific findings that, in the year his trial began, for example, Wilson had income of approximately $134,000 and had spent over $18,000 in restaurant and wine tabs. *Id.* He also was currently out of prison and earning income. *Id.* at 357. In reviewing the order of reimbursement, the *Wilson* court stated the general rule that "[a] thorough

[9]As we previously noted, the government relies heavily on our prior unpublished decisions in *United States v. Jackson*, 1998 WL 386109 (4th Cir. June 19, 1998) (unpublished) and *United States v. Moore*, 1998 WL 85296 (4th Cir. Mar. 2, 1998) (unpublished). Both opinions held that "the district court need not make an explicit finding on the record that the defendant has the ability to pay." That conclusion, as indicated above, was in error. To the extent those decisions are contrary to our holding herein, those decisions have no precedential effect and are not binding on this panel. Local Rule 32.1. Moreover, in both of those cases, the defendants had agreed to make reimbursement in their plea agreements and apparently did not object to the imposition of the reimbursement order at sentencing. *Jackson*, 1998 WL 386109, at *4; *Moore*, 1998 WL 85296, at *1. Further, in *Moore*, the defendant had already made partial payment of his attorney's fees.

inquiry into the defendant's finances, though not a full adversarial hearing, should precede an order of reimbursement." *Id.* at 358. Because the district court had performed the requisite inquiry, the Sixth Circuit affirmed the reimbursement order.

In contradistinction to the thorough inquiry conducted by the district court in *Wilson*, the de minimis findings by the district court regarding Moore's financial capacity and ability to pay are stark.[10] Effectively, the district court made no findings under § 3006A(c) that Moore "is financially able . . . to make partial payment for the representation or under § 3006A(f) that "funds are available for payment." Instead, the court simply adopted the probation officer's standing $50 a month repayment plan.

The record, to the extent there is one, showed Moore had virtually no income over a period of years and had no assets or other things of value. The mere fact that he has a GED and some work training (although no steady work history) does not support a finding that "funds are available." Unlike the income stream in *Wilson*, which was a readily identifiable asset, the theoretical income stream here, years down the road after completion of a fifteen-year sentence, was based purely on speculation with no basis in fact.

---

[10]In *Wilson*, the magistrate judge held a separate hearing solely on the issue of the defendant's finances and issued a 26-page report, which satisfied the requirement of a "thorough inquiry." 597 F.3d at 358. Our reference to *Wilson*, however should not be interpreted as an indication that such an in-depth analysis is necessary or required by § 3006A(f) in every case. Rather, the level of detail required for such a finding will vary based on the facts and circumstances of each particular defendant. In *Wilson*, for example, the defendant's finances were apparently quite complex and may have warranted lengthier treatment. In the more typical case, the findings may not require a lengthy written order or separate hearing. *See, e.g.*, *United States v. Embry*, 128 F.3d 584, 586 (7th Cir. 1997) (no abuse of discretion where, before ordering reimbursement, the district court made the appropriate inquiry into defendant's finances and "topped it off with written findings"); *McGiffen*, 267 F.3d at 589 (a formal evidentiary hearing is not always required, but specific findings are).

Of particular note in the case at bar is that the district court specifically found that Moore, who was clearly eligible for a court-appointed attorney, did "not have the ability to pay a fine or interest." J.A. 75. Nonetheless, the court accepted the apparently standard and factually unsupported recommendation of the probation office that Moore's GED and training meant he would be able to earn an amount of money sufficient to repay $50 per month,[11] and thus ordered Moore to repay that amount while on supervised release. In so doing, the district court made no finding that there were any identifiable funds or assets available to Moore. To the contrary, the district court expressly adopted the PSR, which states that "[Moore] does not appear to have the financial resources to make an immediate monetary payment." J.A. 126.

Because the district court failed to make the specific findings required by § 3006A(c) or (f) to support an order of reimbursement, its judgment at sentencing, insofar as it required a reimbursement of attorneys' fees, was in error.

To provide additional direction to district courts, we caution that our holding should not be interpreted as imposing an overly restrictive definition of "available," such as one that only permits an order of reimbursement if a defendant has cash or funds in a bank account which are immediately available to him to be withdrawn. Put differently, availability is not limited only to currently liquid assets at the time reimbursement is ordered. Instead, a repayment order may be based on identified funds and assets, even if those assets will not become liquid until a future date, such as the escrow payment from an upcoming sale of real property, the scheduled disbursement of proceeds from a trust, or continuing payments under a promissory note or contract. *See Wilson*, 597 F.3d at

---

[11]The defendant argued, and the government did not deny, that it is customary for probation officers in the Western District of North Carolina to suggest at least that amount for every defendant regardless of the defendant's present income or assets.

360 ("A court . . . might find a defendant 'financially able' to pay based on money pending in escrow even though those funds will not become 'available for payment' until some future date."); *see also* Br. of Appellant at 15 (Moore acknowledging a reimbursement order can be based on a defendant's "income stream"). The crucial factor in complying with the statutory mandates in § 3006A(c) ("the court *finds* that the person is financially able") and § 3006A(f) ("the court *finds* the funds are available for payment") is that the sentencing court indeed make a finding on the record identifying the specific assets "available" for reimbursement of attorneys' fees and how those assets qualify the defendant as financially eligible to pay.

Because the district court did not comply with the statutory mandate here, we vacate that portion of the district court's judgment requiring Moore to repay his court-appointed attorneys' fees, and remand for resentencing consistent with this opinion,[12] as to that issue only.

## C.

Our holding on the validity of the reimbursement order here is a narrow one; it is not intended to address or resolve all issues of when a defendant's "funds are available for payment" as that will require a fact-specific analysis in each case. Neither do we address whether the repayment of attorneys' fees as a condition of supervised release is a permitted condition. That issue, one which has led to a split of authority among the United States Courts of Appeals,[13] and which this

---

[12]We note for clarification that the only part of the sentencing order being vacated is that regarding the reimbursement of attorneys' fees. No other portion of the sentencing order is affected.

[13]*Compare Evans*, 155 F.3d at 250-52 & n.8 (rejecting imposition of counsel fees as a condition of supervised release because it is not consistent with the statutory goals of 18 U.S.C. § 3553(a)(2)(B)-(D), but recognizing that the court could impose a separate reimbursement order under

Court apparently has not yet addressed in a published opinion,[14] was neither briefed nor fully argued by the parties and is therefore not squarely presented in this case. Moreover, because we have found the reimbursement order here improper on other grounds, we need not decide that issue.

Similarly, we do not decide today whether the district court in Moore's case could impose repayment of fees at a later date, such as while Moore is actually serving his supervised release term, either as a condition of release or as a separate § 3006A(f) order, assuming it makes the requisite finding that Moore has funds or assets available for repayment. We limit our holding here to the following: on the current record, the district court erred by failing to make the mandatory statutory findings that "funds are available" to Moore for repayment as required to order reimbursement under the CJA.

---

§ 3006A(f)); *United States v. Eyler*, 67 F.3d 1386, 1393 (9th Cir. 1995) (reimbursement of counsel fees cannot be a condition of supervised release); *United States v. Turner*, 628 F.2d 461, 466-67 (5th Cir. 1980) (same as to probation); *with United States v. Merric*, 166 F.3d 406, 411–12 (1st Cir. 1999) (declining to follow Judicial Conference recommendation that prohibits reimbursement of CJA fees as a "condition of probation," *see* VII Administrative Office of U.S. Courts, *Guide to Judiciary Policies & Procedures*, ch. 2, pt. A, § 230.40(d), and instead holding that a district court could make repayment of CJA fees a condition of supervised release); *United States v. Gurtunca*, 836 F.2d 283, 288-89 (7th Cir. 1987) (repayment of counsel fees is a permissible condition of probation); *United States v. Santarpio*, 560 F.2d 448, 455-56 (1st Cir. 1977) (same).

[14]*But see United States v. Johnson*, 138 F.3d 115, 120 (4th Cir. 1998) (not addressing issue directly, but stating that the original monetary obligations imposed at the time of defendant's original judgment of conviction, which included an order to reimburse the government for the costs of CJA counsel, survived the revocation of his supervised release); *Jackson*, 1998 WL 386109, at *4 (unpublished decision holding the district court had such authority, without citation to any Fourth Circuit case); *Moore*, 1998 WL 85296, at *1 n.3 (same).

## IV.

For the reasons stated above, the judgment of the district court is affirmed in part and vacated in part. This case is remanded to the district court for resentencing consistent with this opinion.

*AFFIRMED IN PART,*
*VACATED IN PART,*
*AND REMANDED*