**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 11-4960**

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

        v.

DEMARCO PEGUES,

                Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Robert J. Conrad, Jr., Chief District Judge. (3:10-cr-00082-RJC-1)

Submitted: July 25, 2012          Decided: August 16, 2012

Before DIAZ and FLOYD, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

Henderson Hill, Executive Director, Ross Hall Richardson, Assistant Federal Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Anne M. Tompkins, United States Attorney, Melissa L. Rikard, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Following a jury trial in the United States District Court for the Western District of North Carolina, Demarco Pegues was convicted of possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1). He appeals his conviction and sentence. We affirm his conviction, but vacate his sentence and remand for resentencing.

First, Pegues challenges the district court's denial of his motion to suppress firearms that flew out of his waistband during his flight from a traffic stop of a car in which he was a passenger. The traffic stop occurred in Charlotte, North Carolina in the early morning hours of January 24, 2009. We review the legal conclusions of a district court's denial of a motion to suppress de novo and the findings of fact for clear error, construing the evidence in the light most favorable to the government, the prevailing party below. United States v. Foster, 634 F.3d 243, 246 (4th Cir. 2011).

A temporary detention of an automobile, even if only for a limited time or purpose, constitutes a Fourth Amendment seizure. Whren v. United States, 517 U.S. 806, 809–10 (1996). Because a routine "traffic stop is . . . more like an investigative detention than a custodial arrest," its limitations must be evaluated under the dual inquiry set out in Terry v. Ohio, 392 U.S. 1 (1968). United States v. Guijon–

2

Ortiz, 660 F.3d 757, 764 (4th Cir. 2011) (internal quotation marks omitted).  Under this analysis, we determine whether the stop "was justified at its inception" and "whether the continued stop was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure."  Id. (internal quotation marks omitted).

Regarding the first Terry inquiry, if an officer has probable cause or reasonable suspicion to believe a suspect has violated a traffic law, the officer's decision to stop the suspect's car is reasonable under the Fourth Amendment, regardless of the officer's subjective motivation for the stop. United States v. Hassan El, 5 F.3d 726, 730 (4th Cir. 1993).  In evaluating the second inquiry, we must consider whether the officer "'diligently pursue[d] the investigation of the justification for the stop.'"  Guijon-Ortiz, 660 F.3d at 768 (quoting United States v. Digiovanni, 650 F.3d 498, 509 (4th Cir. 2011)).

A lawful routine traffic stop justifies detaining the car's occupants for the time necessary to request a driver's license and registration, run a computer check, and issue a citation.  Digiovanni, 650 F.3d at 507.  The officer also is permitted to request passenger identification or inquire into unrelated matters, as long as doing so does not measurably prolong the length of the traffic stop.  Guijon-Ortiz, 660 F.3d

3

at 765.  However, the officer may not "'definitively abandon[] the prosecution of the traffic stop and embark[] on another sustained course of investigation'" absent additional justification.  Id. at 766 (quoting United States v. Everett, 601 F.3d 484, 495 (6th Cir. 2010)).  In other words, if a police officer seeks to prolong a traffic stop to allow for investigation into a matter outside the scope of the initial stop, he must possess reasonable suspicion of additional criminal activity.  Digiovanni, 650 F.3d at 507.

While there is no "precise articulation of what constitutes reasonable suspicion," United States v. Branch, 537 F.3d 328, 336 (4th Cir. 2008) (citation and internal quotation marks omitted), "a police officer must offer specific and articulable facts that demonstrate at least a minimal level of objective justification for the belief that criminal activity is afoot."  Id. at 337 (citation and internal quotation marks omitted).  Officers may use their "training and expertise" to identify sets of factors which are "individually quite consistent with innocent travel" yet "taken together, produce a reasonable suspicion of criminal activity."  Id. at 336–37 (citation and internal quotation marks omitted).

Pegues does not challenge the initial stop of the car.  Rather, he challenges the scope and duration of the continued stop.  After reviewing the video evidence, the testimony at the

4

suppression hearing, and the district court's findings, we conclude that the stop was limited in scope and duration. After the initial stop of the car driven by Randall Cummings, Officer Cristo Fitzpatrick of the Charlotte-Mecklenburg Police Department obtained Cummings' driver's license and registration and immediately proceeded to run his information through the routine law enforcement databases. Meanwhile, Officer Timothy Kiefer approached the car to obtain identification from the passengers. At this point, Officer Kiefer's efforts were stymied by the actions of William Spann (the front seat passenger) and Pegues (the back seat passenger). They did not have identification with them, the window was rolled down only a couple of inches, and Spann and Pegues spoke softly, making communication extremely difficult. During this encounter, Officer Kiefer observed Pegues attempting to hide something in the back seat and also observed a beer can, although he could not determine whether the can had been opened. He also observed Spann keeping his hands "very tight to his person, very close in on his clothing." (J.A. 77). Under these circumstances, it was permissible for Officer Kiefer to continue the stop for a short time to investigate whether criminal activity was afoot. Cf. Illinois v. Wardlow, 528 U.S. 119, 125 (2000) (noting that the determination of reasonable suspicion must be based on common sense judgments and inferences about human behavior).

5

After conferring with Officer Fitzpatrick, Officer Kiefer asked Spann to step to the back of the car, and he asked for consent to pat him down for weapons. Spann agreed to the pat-down, but when Officer Kiefer stepped toward him to pat him down, Spann immediately backed up. Spann began to act "jumpy" and put his hands in the pockets of his hooded sweatshirt, which led the officers to think he had weapons or drugs in his pocket. (J.A. 43). Officer Kiefer told Spann that he was making him nervous and again asked for his consent to pat him down, and Spann again consented. But Spann stepped back every time Officer Kiefer stepped toward him. So the officers, concerned for their safety at this point, attempted to detain Spann. Spann was not cooperative and resisted the officers' attempts to handcuff him, causing the officers to have to wrestle him to the ground. Meanwhile, Pegues, who had remained in the back seat during the officers' encounter with Spann, climbed over the front seat, exited through the open front passenger door, and took off running. Officer Kiefer took off after him. During the chase, Pegues fell and two loaded firearms flew out of his waistband, eventually resting on the ground in front of where he was lying. Officer Kiefer then jumped on Pegues' back to secure him.

Unquestionably, Pegues' actions constituted resisting, delaying, or obstructing an officer under N.C. Gen. Stat. § 14-

6

223; see also State v. McNeill, 283 S.E.2d 565, 567 (N.C. App. 1981) (flight from a lawful investigatory stop provides probable cause to arrest individual for violation of N.C. Gen. Stat. § 14-223). Accordingly, Officer Kiefer was permitted to seize Pegues after he fled the scene. Because the seizure of Pegues and the firearms was proper, the district court appropriately denied Pegues' motion to suppress the firearms.

Next, Pegues challenges the district court's admission of certain evidence, namely, that a firearm and a quantity of marijuana was recovered from Spann after he was wrestled to the ground. We review the district court's evidentiary ruling for an abuse of discretion. United States v. Delfino, 510 F.3d 468, 470 (4th Cir. 2007)

Evidence of uncharged conduct is not other crimes evidence subject to Rule 404(b) if the uncharged conduct arose out of the same series of transactions as the charged offense, or if evidence of the uncharged conduct is necessary to complete the story of the crime on trial. United States v. Basham, 561 F.3d 302, 327 (4th Cir. 2009); United States v. Siegel, 536 F.3d 306, 316 (4th Cir. 2008). Rule 404(b) limits only the admission of evidence of acts extrinsic to the one charged, but does not limit the admission of evidence of intrinsic acts. United States v. Chin, 83 F.3d 83, 87 (4th Cir. 1996). Evidence is "intrinsic" if it provides "context relevant to the criminal

7

charges." United States v. Cooper, 482 F.3d 658, 663 (4th Cir. 2007). In other words, other acts are intrinsic when they are "inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged." Chin, 83 F.3d at 88 (citation and internal quotation marks omitted).

In this case, the evidence recovered from Spann was not admitted to show that Pegues had a criminal disposition and/or would act in conformity therewith. Instead, it was relevant to explain why the officers acted in the manner they did and to explain why Pegues fled from the car. Cf. United States v. Wright, 392 F.3d 1269, 1276 (11th Cir. 2004) (concluding that evidence of defendant's resistance to arrest and battery on a law enforcement officer before the discovery of the firearm giving rise to his felon-in-possession charge gave "the jury the body of the story, not just the ending"). Without this testimony, the jury would be left wondering why the officers restrained Spann and why Pegues fled from the car. Cf. Old Chief v. United States, 519 U.S. 172, 188 (1997) (holding that the government is entitled to present a complete narrative of the crime that "satisf[ies] the jurors' expectations about what proper proof should be"); see also United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007) (noting that "evidence is inextricably intertwined with the evidence

8

regarding the charged offense if it forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted) (citation and internal quotation marks omitted). Furthermore, the potential for unfair prejudice did not substantially outweigh the probative value of the evidence under Rule 403. Accordingly, the district court did not abuse its discretion in admitting this evidence.[*]

Finally, Pegues contends that the district court erred when it ordered him to reimburse the government for the services

---

[*] The improper admission of evidence is subject to harmless error review. See Fed. R. Crim. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."); Fed. R. Evid. 103(a) (noting evidentiary errors support reversal only if they affect "substantial right"). Erroneously admitted evidence is harmless if a reviewing court is able to "say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." Kotteakos v. United States, 328 U.S. 750, 765 (1946); United States v. Abu Ali, 528 F.3d 210, 231 (4th Cir. 2008). Even assuming the district court erred in permitting the admission of the challenged evidence, we conclude that the error is harmless. The challenged evidence played little role in the outcome of the trial, as the challenged evidence simply provided background to the events leading up to the seizure of Pegues and the seizure of the firearms found on the ground in front of where he was lying. The main issue at trial was whether Pegues possessed these firearms, as he essentially conceded his felony status and interstate nexus. Unfortunately for Pegues, the evidence that he possessed the firearms was overwhelming, rendering any error harmless.

of his court-appointed attorney. On this contention, the government concedes error.

In United States v. Moore, 666 F.3d 313 (4th Cir. 2012), we noted that under the Criminal Justice Act, 18 U.S.C. § 3006A, the government must provide adequate legal representation to criminal defendants charged with a federal felony who are unable to pay, but if the district court subsequently finds that the defendant "'is financially able to obtain counsel or to make partial payment for the representation,'" repayment is authorized under subsection (f). Moore, 666 F.3d at 321 (quoting 18 U.S.C. § 3006A(c)). Subsection (f) authorizes a district court to order repayment of attorneys' fees "[w]henever . . . the court finds that funds are available for payment from or on behalf of a person furnished representation." 18 U.S.C. § 3006A(f).

In Moore, we held that to order reimbursement of attorneys' fees, the district court must "find[] that there are specific funds, assets, or asset streams (or the fixed right to those funds, assets or asset streams) that are (1) identified by the court and (2) available to the defendant for the repayment of the court-appointed attorneys' fees." 666 F.3d at 322. We noted that the district court made no findings that the defendant was "financially able . . . to make partial payment for the representation" or that funds were "available for

10

payment." Id. at 323 (internal quotation marks omitted). We also noted that, in the absence of such findings, the district court simultaneously concluded that the defendant was unable to pay a fine or interest. Id. Finding that the district court's reimbursement order conflicted with the statutory requirements, we vacated that portion of the judgment and remanded for resentencing. Id. at 324.

Similarly, the district court here made no findings regarding Pegues' ability to reimburse the government for attorneys' fees or the availability of such funds. To the contrary, the district court concluded that Pegues was unable to pay a fine or interest. Because Pegues' reimbursement order is of the same type we rejected in Moore, we vacate that portion of the district court's judgment and remand for resentencing.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED IN PART,
VACATED IN PART,
AND REMANDED

11