UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-4632

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

CLAUDIO GUTIERREZ-CRUZ,

Defendant – Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Catherine C. Eagles, District Judge. (1:16-cr-00187-CCE-1)

Submitted: January 4, 2017                     Decided: March 1, 2017

Before DUNCAN and WYNN, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Louis C. Allen, Federal Public Defender, Greensboro, North Carolina, Mireille P. Clough, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Winston-Salem, North Carolina, for Appellant. Ripley Rand, United States Attorney, Greensboro, North Carolina, Terry M. Meinecke, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Winston-Salem, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Defendant-Appellant Claudio Gutierrez-Cruz appeals the district court's order finding him "financially able" to repay the cost of his court-appointed counsel under the Criminal Justice Act ("CJA"), 18 U.S.C. § 3006A. For the reasons that follow, we affirm.

I.

After Defendant's arrest on a charge of first-degree murder in violation of 18 U.S.C. § 1111, he completed a financial affidavit and requested that counsel be appointed on his behalf. In his financial affidavit, Defendant disclosed his sole ownership of two unencumbered assets: a residence in the United States valued at $80,000 (the "United States residence"), and a residence in Mexico valued at $100,000 (the "Mexico residence").[1]

On November 16, 2015, upon reviewing Defendant's financial affidavit, the magistrate judge appointed counsel, but determined that Defendant was financially able to repay the full cost of his court-appointed attorney. The magistrate judge therefore ordered Defendant to "make the full payment as soon as his real estate holding(s) [could] be liquidated, or other financial arrangements [could] be made." J.A. 7.

_____

[1] At some point after Defendant filled out his initial financial affidavit, he made changes to the estimated values of his property. In the updated financial affidavit, Defendant valued the United States residence at $100,000 and designated it as his "family home," and he valued the Mexico residence at $60,000. J.A. 65. The tax value of the United States residence is $93,830.

On June 21, 2016, Defendant pleaded guilty to involuntary manslaughter, pursuant to a plea agreement. Prior to sentencing, Defendant filed a motion asking the district court to reconsider the magistrate's reimbursement order, arguing that he needed to retain both "homestead[s]" for himself and his family. J.A. 85–86. Defendant maintained that the United States residence would house Defendant's "common-law wife"[2] Veronica Torres, and their three children--aged 21, 16, and 13. J.A. 59. Defendant asserted that he would live in the Mexico residence after serving his three-year sentence and being deported.

At Defendant's sentencing hearing on September 26, 2016, the district court learned that Torres and Defendant's children had only recently returned to the United States residence after having lived in Mexico for approximately ten years. During that time, Torres's brother resided in the United States residence. The district court denied Defendant's motion, finding that Defendant was financially able to repay the cost of his court-appointed counsel given his "substantial assets." J.A. 76. Because Defendant "owns two pieces of property free and clear," J.A. 85, the district court reasoned that it was not "unreasonable to ask him to repay his attorney's fees," J.A. 82. The district court observed that Defendant would not be forced to sell his properties--he had other options such as borrowing against them.

---

[2] Defendant refers to Veronica Torres, the mother of his children, as his "common-law wife"; however, North Carolina does not recognize common law marriage, and Defendant did not raise the issue of comity with Mexico.

The district court then sentenced Defendant to thirty-six months' imprisonment and one year of supervised release. The court imposed a $1,000 fine and a $100 special assessment, finding that Defendant would be financially able to pay a fine "without undue hardship." J.A. 76.

## II.

Defendant argues that the district court erred in ordering him to use the equity in his "two modest homes" to repay the cost of his legal representation because he needs both properties to house himself and his children, and he should not be ordered to sell either one. Appellant's Br. at 7, 9. The government counters that the reimbursement order was proper because the district court appropriately identified specific assets--the two unencumbered residences--with which Defendant could repay the cost of his court-appointed counsel. We review a district court's legal interpretation of 18 U.S.C. § 3006A de novo, its factual findings for clear error, and its application of those findings for abuse of discretion. *United States v. Moore*, 666 F.3d 313, 320–21 (4th Cir. 2012).

### A.

The CJA provides for legal representation when criminal defendants are charged with a felony and are financially unable to obtain their own adequate legal defense. 18 U.S.C. § 3006A(a). The CJA protects the Sixth Amendment right of indigent defendants to counsel. *See United States v. Parker*, 439 F.3d 81, 90–91 (2d Cir. 2006). But "CJA funds are a necessarily limited resource." *Id*. at 109. As stewards of CJA resources, courts must ensure that these public funds are reserved for defendants who do

4

not have the assets or income to afford adequate legal representation. *See id*. Therefore, to qualify for court-appointed counsel under the CJA, a "defendant bears the burden of proving that he lacks the [financial] means to retain counsel." *United States v. Ductan*, 800 F.3d 642, 652 n.5 (4th Cir. 2015) (citing *United States v. Davis*, 958 F.2d 47, 48 (4th Cir. 1992)). In addition, "[i]f at any time after the appointment of counsel the . . . court finds that the person is financially able to obtain counsel or to make partial payment for the representation, it may terminate the appointment of counsel or authorize payment . . . as the interests of justice may dictate." 18 U.S.C. § 3006A(c).

If a court determines that a defendant is financially able to pay, but his assets are illiquid at present, the court should "clearly advise[] [the defendant] that he has the right to counsel at the government's immediate expense." *United States v. Johnson*, 659 F.2d 415, 418 (4th Cir. 1981). The court may then order reimbursement. 18 U.S.C. § 3006A(f).

To issue a reimbursement order, a court must find "that there are specific funds, assets, or asset streams (or the fixed right to those funds, assets or asset streams) that are (1) identified by the court and (2) available to the defendant for the repayment of the court-appointed attorneys' fees." *Moore*, 666 F.3d at 322. A fund or asset is "available to" the defendant if it is "readily identifiable" and not based on speculation. *Id*. at 323. Availability is a "fact-specific analysis" and "may be based on identified funds and assets . . . [that] will not become liquid until a future date." *Id*. at 324.

5

B.

In the instant case, the district court did not err in ordering Defendant to repay the cost of his legal representation where it found that Defendant had unencumbered equity in, and sole ownership of, two separate residential properties. As required by *Moore*, the district court identified specific, non-speculative assets--the United States residence and the Mexico residence--which were "available to" Defendant for repayment of his court-appointed attorney's fees. *Moore*, 666 F.3d at 322.[3]

Defendant argues that this court should apply a "homestead exemption"--for purposes of analyzing the reimbursement order--and disregard the equity in his two homes because the Mexico residence is his homestead, and the United States residence is the homestead for Torres and their children. This court has not recognized a "homestead exemption" that would shelter a residential property from forced sale to pay for court-appointed counsel. And Defendant has provided no authority to support applying North Carolina's homestead exemption, N.C. Const. art. X, § 2(1), to the CJA.[4] In any

---

[3] Because Defendant's "readily identifiable" assets were illiquid, the magistrate judge appropriately followed the instruction of *Johnson*, appointing counsel at Defendant's initial appearance, but ordering Defendant to reimburse the cost once payment could be made. *Moore*, 666 F.3d at 323.

[4] We decline to reach the question of whether the CJA recognizes a homestead exemption. Only one circuit has recognized a state homestead exemption under the CJA. *United States v. Fincher*, 593 F.3d 702, 706–07 (8th Cir. 2010) (exempting part of the defendant's 120-acre property under the CJA by applying the Arkansas Homestead Exemption, Ark. Const. art. 9, § 3, which shields the homestead of Arkansas residents from judicial liens and forced sales). Even if we were to find a homestead exemption applicable, we doubt Defendant could successfully assert it. North Carolina's homestead exemption protects only those properties "owned and occupied by a *resident* of the (Continued)

event, the district court did not order Defendant to sell either of his properties. On the contrary, the court suggested that Defendant had other options, such as borrowing against them. Indeed, Defendant could rent out his Mexico residence while serving his prison sentence, or charge rent to the adults occupying his United States residence--Torres or Defendant's 21-year-old son.[5] Because the district court found that Defendant had enough equity in real property to disqualify him from court-appointed counsel under the CJA at taxpayer expense, the district court did not err.

### III.

For the foregoing reasons, we affirm the district court's reimbursement order. We dispense with oral argument because the facts and legal contentions are adequately

---

State." N.C. Const. art. X, § 2(1) (emphasis added). Given that Defendant was living in Mexico for ten years prior to his arrest and extradition to the United States, it is doubtful that Defendant qualifies as a "resident of the State." *See Cromer v. Self*, 62 S.E. 885, 886 (N.C. 1908) (holding that the defendant was not a "resident" under the North Carolina homestead exemption, even though he owned property in the state and his family still lived there, because he fled North Carolina to escape criminal prosecution and had no intention of returning).

[5] It is unclear whether Defendant collected rent from Torres's brother while he lived in the United States residence during the ten-year period Defendant and his family lived in Mexico. Defendant is at liberty to allow anyone to live in his home free of charge, but the government is not obliged to subsidize his doing so. *See United States v. Mena-Barraza*, No. EP-13-CR-1726(18)-KC, 2015 WL 1980702, at *9 (W.D. Tex. Apr. 30, 2015) (unpublished) (observing that while the defendant was "certainly permitted to make her own financial choices," including allowing her family members to live in her three residential properties rent free, "the government [wa]s not required to subsidize those choices by paying [d]efendant's legal fees").

7

presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED