**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

GREGORY ROLAND PRUESS,

*Defendant-Appellant.*

No. 11-5127

Appeal from the United States District Court
for the Western District of North Carolina, at Statesville.
Richard L. Voorhees, District Judge.
(5:08-cr-00054-RLV-DSC-1)

Argued: December 7, 2012

Decided: December 31, 2012

Before MOTZ, DUNCAN, and WYNN, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge Duncan and Judge Wynn joined.

## COUNSEL

**ARGUED:** Ann Loraine Hester, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant. Amy Elizabeth Ray, OFFICE OF THE UNITED STATES ATTORNEY, Asheville, North Carolina, for Appellee. **ON BRIEF:** Henderson Hill, Executive

Director, Peter S. Adolf, Assistant Federal Defender, FED-
ERAL DEFENDERS OF WESTERN NORTH CAROLINA,
INC., Charlotte, North Carolina, for Appellant. Anne M.
Tompkins, United States Attorney, Charlotte, North Carolina,
for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

Gregory Roland Pruess, a convicted felon, pled guilty to
possession of ammunition in violation of 18 U.S.C.
§ 922(g)(1) (2006). In doing so, he reserved the right to chal-
lenge the conviction as a violation of his rights under the Sec-
ond and Fifth Amendments. Pruess contends that application
of the felon-in-possession prohibition to him, an assertedly
non-violent felon, violates the Constitution. For the reasons
set forth within, we reject Pruess' challenge and affirm his
conviction.

I.

Pruess, formerly a licensed firearms dealer and collector of
weapons and other military memorabilia, owned and operated
a military museum. Over the years, he has been convicted of
numerous firearms violations.

In 1994, following an undercover operation conducted by
the Bureau of Alcohol, Tobacco, and Firearms, the Govern-
ment charged Pruess with twelve firearms offenses related to
his possession and transfer of three grenades and a mortar
round, all with obliterated identification and lot numbers.
Pruess pled guilty to one felony count and the court sentenced
him to twelve months' imprisonment.

Soon after his release, Pruess returned to arms dealing,
despite his status as a convicted felon. Pruess sold UZI sub-

machine gun barrels, M-16 components, M-122 remote firing devices, AK-47 machine guns, grenades, and other weapons—including stolen weapons—to undercover agents and a cooperating witness. On one occasion, when selling weapons, Pruess brought extra guns, telling the agents that the guns were for protection or in case anything went wrong with the deal. Authorities arrested Pruess and charged him with twenty-five firearms violations. After Pruess pled guilty to eighteen counts, the court sentenced him to 108-month and 60-month terms of imprisonment, to be served concurrently. In 1999, shortly before sentencing, Pruess ordered a pistol online using an altered firearms license. As a result, he pled guilty to an additional count and the court added eight months to his sentence.

Following his release, Pruess sought to purchase from a confidential informant belted ammunition, grenades, and parachute flares, knowing they were likely stolen. Agents arrested Pruess after he paid for the ammunition. Pruess entered a conditional guilty plea, admitting possession of ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1), but reserving the right to appeal the district court's rejection of a constitutional challenge to his conviction. The district court accepted the plea and sentenced Pruess to twenty-one months' imprisonment and a $550 fine.

Pruess appealed the judgment, asserting that the felon-in-possession prohibition violated the Second and Fifth Amendments when applied to non-violent felons like him. Pruess also claimed that he was not planning to use the ammunition himself, but rather intended to have others use it to test a device he had designed to enable attachment of night vision scopes to rifles and other weapons. We remanded the case for consideration in light of our recent decision in *United States v. Chester*, 628 F.3d 673 (4th Cir. 2010). *See United States v. Pruess*, 416 F. App'x 274, 275 (4th Cir. 2011). On remand, the district court again upheld the constitutionality of Pruess' conviction. Pruess appeals that judgment here.

## II.

Pruess' appeal principally rests on his contentions that he is a non-violent felon and that the Second Amendment protects the right of non-violent felons to possess ammunition. We consider such constitutional challenges de novo. *See United States v. Moore*, 666 F.3d 313, 316 (4th Cir. 2012).

In *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008), the Supreme Court held that the Second Amendment confers a right to keep and bear arms "typically possessed by law-abiding citizens for lawful purposes." Following *Heller*, we developed a "framework for deciding Second Amendment challenges" in *United States v. Chester*. 628 F.3d at 678. That framework has two steps. First, we ask whether "the challenged law imposes a burden on conduct falling within the scope of the Second Amendment's guarantee." *Id.* at 680. That is, was "the conduct at issue . . . understood to be within the scope of the right at the time of ratification"? *Id.* If the answer is no, "the challenged law is valid." *Id.* "If the challenged regulation burdens conduct that was within the scope of the Second Amendment as historically understood, then we move to the second step of applying an appropriate form of means-end scrutiny." *Id.*

In *Moore*, 666 F.3d at 318, we held that "the *Chester* analysis is more streamlined" in cases involving firearms regulations deemed "presumptively lawful" in *Heller*. That is, a presumptively lawful regulation could not violate the Second Amendment unless, as applied, it proscribed conduct "fall-[ing] within the category of . . . '*law-abiding responsible* citizens . . . us[ing] arms in defense of hearth and home.'" *See id.* at 319 (quoting *Heller*, 554 U.S. at 635). Among the firearms regulations specifically enumerated as presumptively lawful in *Heller* are "longstanding prohibitions on the possession of firearms by felons." 554 U.S. at 626-27 & n.26.[1] Like

---

[1]Pruess notes that *Heller* did not explicitly label regulation of felons' possession of *ammunition* as presumptively lawful. This omission does not

this case, but unlike *Chester* (which involved a misdemeanor domestic violence offender, *see* 628 F.3d at 677), *Moore* addressed a Second Amendment challenge to the presumptively lawful felon-in-possession prohibition under § 922(g)(1). *See Moore*, 666 F.3d at 315. The defendant in *Moore* failed to rebut the presumption of lawfulness by showing his conduct was that of a "law-abiding responsible citizen" acting "in defense of hearth and home." *See id.* at 319. Thus, we rejected Moore's challenge without proceeding through a full *Chester* analysis.

Here, Pruess, like the defendant in *Moore*, cannot rebut the presumption of lawfulness of the felon-in-possession prohibition as applied to him. Pruess' repeated violations of the firearms laws, leading to at least twenty prior convictions, make clear he is hardly "law-abiding" and "responsible." Indeed, even if Pruess did not intend to use them for violence himself, he acknowledged that he believed that weapons and ammunition underlying his convictions were stolen. "Courts have held in a number of contexts that offenses relating to . . . receiving stolen weapons are closely related to violent crime." *United States v. Barton*, 633 F.3d 168, 174 (3d Cir. 2011). Hence Pruess "undoubtedly flunks the 'law-abiding responsible citizen' requirement." *Moore*, 666 F.3d at 320.

Moreover, Pruess' vast collection of weapons and explo-

---

aid Pruess, however, because the felon-in-possession ban to which *Heller* did explicitly refer has long encompassed a ban on ammunition by felons. *See, e.g.*, 18 U.S.C. § 922(g) (covering ammunition); *see also* Gun Control Act of 1968, Pub. L. No. 90-618, § 922(g)-(h), 82 Stat. 1213, 1220-21 (same). Pruess' related argument that the prohibition of possession of firearms by non-violent felons is not "longstanding" and so not presumptively lawful under *Heller*, 554 U.S. at 626-27 & n.26, also fails. Pruess himself admits that the federal felon-in-possession ban has applied to non-violent felons for more than half a century. *See* Pub. L. No. 87-342, 75 Stat. 757 (1961) (amending the Federal Firearms Act to ban possession of firearms by all felons, rather than all persons convicted of a "crime of violence").

sives with clearly military purposes—including the belted ammunition appropriate for use in machine guns at issue in this case—demonstrates that the firearms and ammunition cannot be intended, in any substantial part, for "defense of hearth and home."[2] Tellingly, although Pruess asserts that the belted ammunition, when detached from the belt, is standard ammunition "sold at Wal-Mart," he does *not* assert that his purpose in acquiring the ammunition was self-defense. Rather, he claims he intended to use the ammunition to test the night-vision scope-attachment device he had designed. Yet Pruess cites no post-*Heller* precedent to support his dubious contention that the Second Amendment protects this purpose, either because it (like hunting) provides him financial support, or because it purportedly supports the military. Accordingly, Pruess' "proffered reason for possessing" the ammunition at issue "is far too vague and unsubstantiated to remove his case from the typical felon in possession case." *Moore*, 666 F.3d at 320.

Therefore, as in *Moore*, we can conclude without a full *Chester* analysis that Pruess' conduct lies outside the scope of the Second Amendment's protection.[3] This conclusion accords with precedent from this court and others, which have

---

[2]The nature of Pruess' weapons collection also counsels against finding Pruess' conduct to be within the scope of the Second Amendment based on the statement in *Heller* that "the sorts of weapons" the Amendment protects are "those in common use at the time" of ratification—not "dangerous and unusual weapons," which there is a "historical tradition of prohibiting." 554 U.S. at 627 (internal quotation marks omitted).

[3]Because the presumption of constitutionality from *Heller* and *Moore* governs, we need not pursue an analysis of the historical scope of the Second Amendment right. We note, however, that Pruess errs in suggesting that historical sources weigh in his favor. The Government offers substantial evidence that the Founders severely limited the right to bear arms, excluding from its protection a broad range of often non-violent individuals and groups deemed "dangerous." *See also United States v. Carter*, 669 F.3d 411, 415 (4th Cir. 2012) ("[T]he Anglo-American right to bear arms has always recognized and accommodated limitations for persons perceived to be dangerous.").

repeatedly upheld the constitutionality of § 922(g) in the face of Second Amendment challenges. Indeed, Pruess "has not pointed us to a single court of appeals decision in the aftermath of *Heller* that has reversed any § 922(g) conviction on Second Amendment grounds." *United States v. Mahin*, 668 F.3d 119, 123 (4th Cir. 2012).

Most specifically relevant, our sister circuits have consistently upheld applications of § 922(g)(1) even to *non-violent* felons. *See, e.g.*, *United States v. Torres-Rosario*, 658 F.3d 110, 113 (1st Cir. 2011) (rejecting an as-applied challenge to § 922(g)(1) by a drug offender with "no prior convictions for any violent felony"), *cert. denied*, 132 S. Ct. 1766 (2012); *Barton*, 633 F.3d at 174 (same for felon with only prior drug and receipt of stolen weapon convictions); *United States v. Rozier*, 598 F.3d 768, 769 & n.1 (11th Cir. 2010) (same for felon with only prior drug convictions); *United States v. Vongxay*, 594 F.3d 1111, 1113-14 (9th Cir. 2010) (same for felon with only prior non-violent car burglary and drug possession convictions); *see also United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) ("[E]xtension of the [§ 922(g)(1)] disqualification to non-violent felons (embezzlers and tax evaders, for example) is presumptively constitutional, as *Heller* said . . . ."); *United States v. Scroggins*, 599 F.3d 433, 451 (5th Cir. 2010) ("Prior to *Heller*, this circuit had already recognized an individual right to bear arms, and had determined that criminal prohibitions on felons (violent or nonviolent) possessing firearms did not violate that right.").

We now join our sister circuits in holding that application of the felon-in-possession prohibition to allegedly non-violent felons like Pruess does not violate the Second Amendment. Though we acknowledged in *Moore* that there in theory might be "an as-applied Second Amendment challenge to 922(g)(1)" that "could succeed," Pruess' challenge, like Moore's, "is not remotely close." *Moore*, 666 F.3d at 320.

### III.

Pruess also claims that § 922(g)(1), as applied, violates the Fifth Amendment equal protection guarantee in that it denies him, an assertedly non-violent felon, an alleged fundamental right to bear arms. We again review de novo. *United States v. Staten*, 666 F.3d 154, 157-58 (4th Cir. 2011). We have held that Pruess has failed to rebut the constitutionality under the Second Amendment of his conviction as a felon in possession. As a result, Pruess has no right—much less a fundamental right—to bear arms and we apply only rational basis review to Pruess' equal protection challenge. *See Giarratano v. Johnson*, 521 F.3d 298, 302-03 (4th Cir. 2008) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

The Government easily satisfies this standard. There is a plainly rational relation between the felon-in-possession prohibition as applied to a collector of dangerous, often stolen weapons and explosives who has repeatedly and flagrantly ignored the laws of the United States, like Pruess, and the legitimate government interest in public safety. *See Lewis v. United States*, 445 U.S. 55, 56-57, 65-66 (1980) (holding that application of a felon-in-possession ban to a felon with only a prior breaking-and-entering conviction, entered without the defendant having aid of counsel, "clearly meets" rational basis scrutiny); *Vongxay*, 594 F.3d at 1114, 1118-19 (following *Lewis* post-*Heller* to hold that application of § 922(g)(1) to a felon with only non-violent prior convictions satisfies rational basis review). Accordingly, Pruess' equal protection challenge also fails.

### IV.

Because we find each of Pruess' claims on appeal to be without merit, we affirm the judgment of the district court.

*AFFIRMED*