JAMES, J.
*430 Defendant appeals from a judgment of conviction of one count of felon in possession of a firearm, ORS 166.270. On appeal defendant raises, among other issues, two assignments of error pertaining to the denial of motions for judgment of acquittal that both, in essence, raise the same constitutional question: does either the Second Amendment to the United States Constitution, or Article I, section 27, of the Oregon Constitution limit the government's power to criminalize the actual, or constructive, possession of a firearm by a felon in their home? As discussed below, we recognize that the potential for constitutional limitations on the concept of constructive possession is an interesting, and unresolved, area of law. However, we need not reach that question in this case, because, in addition to constructive possession, the jury here was instructed on actual possession, and some evidence supported actual possession. As to whether either the Second Amendment, or Article I, section 27, prohibit the criminalization of actual possession of a firearm by a felon in the home, as defendant argues, we hold they do not. Accordingly, we affirm.[1]
The underlying facts are largely undisputed by the parties. Defendant was convicted of second-degree burglary, a Class C felony, in 2002. Although that conviction was later reduced to a misdemeanor, because of the initial felony conviction defendant fell under the dictates of ORS 166.270(1), which prohibits the owning, possession, or "custody and control" of any firearm by a convicted felon. While there are statutory provisions in Oregon that provide a mechanism for certain felons to restore their firearm rights, defendant never pursued those options.
In September 2013, two Oregon State Troopers, conducting an investigation into possible game violations and unlawful cutting of timber in rural Lake County, encountered a deer hunting camp site. That camp site was occupied by defendant, his wife, his father, and one other individual. During the investigation, the troopers learned from Oregon *431 State Police dispatch that defendant was a convicted felon. The troopers obtained consent to search the camp trailer in which *543 defendant and his wife were residing, where they found a .38 caliber revolver in a refrigerator and a 9mm semiautomatic pistol on or near a bed in the trailer. A deer rifle was also found in the camp, but not in the trailer.
A grand jury indicted defendant on one count of felon in possession of a firearm. At trial, defendant raised state and federal constitutional challenges to the charge in the form of motions for judgment of acquittal, which were denied by the court. On appeal, defendant renews his challenge, which we construe as involving two separate arguments. First, defendant raises an as-applied challenge, arguing that the Second Amendment and Article I, section 27, prohibit the doctrine of constructive possession from being applied in this case, because doing so would functionally deprive his spouse of her lawful right to possess firearms in their shared home. Second, defendant raises what we construe as a facial overbreadth challenge to ORS 166.270(1), arguing that in the wake of District of Columbia v. Heller , 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), the state cannot prohibit the actual possession of firearms by felons when that possession occurs entirely within the home.
For the purposes of ORS 166.270(1), "Possess means to have physical possession or otherwise to exercise dominion or control over property." ORS 161.015(9) (internal quotation marks omitted). Possession includes "actual" and "constructive" possession. State v. Casey , 346 Or. 54, 59, 203 P.3d 202 (2009). Actual possession means physical possession, that is, "bodily or physical control" of property. State v. Fries , 344 Or. 541, 546, 185 P.3d 453 (2008). Constructive possession means exercising control over property or having the right to do so. State v. Nunes , 268 Or.App. 299, 306, 341 P.3d 224 (2014).
To establish constructive possession, the state must establish that "defendant knowingly exercised control of or the right to control" the firearm. State v. Coria , 39 Or.App. 507, 511, 592 P.2d 1057, rev. den. , 286 Or. 449 (1979). "The right of control may be exercised jointly with other people, it need not be exclusive in order for the defendant to be criminally *432 responsible." Id . To prove control, the state need only show that the firearm was available for the defendant's use. State v. Marsh , 78 Or.App. 290, 294, 716 P.2d 261, rev. den. , 301 Or. 320, 721 P.2d 1388 (1986). Accordingly, constructive possession broadens the crime of possession beyond actual physical control. Casey , 346 Or. at 60, 203 P.3d 202 ; see Wayne R. LaFave, 1 Substantive Criminal Law § 6.1(e), 433 (2d ed. 2003) ("Constructive possession, which is simply a doctrine used to broaden the application of possession-type crimes to situations in which actual physical control cannot be directly proved, is often described in terms of dominion and control.").
Defendant's argument is that his spouse is lawfully entitled to possess a firearm, and that under Heller , she has a constitutional right to bear arms, particularly in the home, for her own self-defense. See Heller , 554 U.S. at 616, 128 S.Ct. 2783 ("It was plainly the understanding in the post-Civil War Congress that the Second Amendment protected an individual right to use arms for self-defense."). According to defendant, if his wife keeps a firearm in the home for protection, as her spouse and cohabitant, he obviously knows about the firearm and has access to it. Accordingly, he would constructively possess the firearm in violation of the law. For defendant, that constitutional tension-his spouse's Second Amendment right to possess the firearm and, implicitly, his First Amendment right to association with his spouse-compels the result that the doctrine of constructive possession cannot be constitutionally relied upon as a basis for the conviction in this case.
There is precedent for applying a constitutional limitation to the doctrine of constructive possession. In People v. Deroche , 299 Mich.App. 301, 309, 829 N.W.2d 891, 896 (2013), the Michigan Court of Appeals faced the issue of whether Michigan Compiled Law (MCL) 750.237, which made it unlawful to possess a firearm while intoxicated, could rely on the doctrine of constructive possession when one was intoxicated in one's own home. Relying on Heller , the court found that while the statute was facially valid, the Second Amendment prohibited its application to constructive possession within the home. Id . at 309-10, 829 N.W.2d 891, 896 ; see also Eugene Volokh, *433 *544 Implementing the Right to Keep and BearArms for Self-Defense: An Analytical Framework and a Research Agenda , 56 UCLA L.Rev. 1443, 1499 (2009).
Ultimately, however, we need not go down that path in this case, because the record reveals that defendant's conviction is not necessarily based on constructive possession. At trial, one trooper testified that defendant "said that he knew about the guns but believed he was able to have them again." Additionally, defendant's father admitted at trial that at the scene, in response to questioning by the troopers, he referred to the pistol as "his son's" gun. These facts, although sparse, would be sufficient evidence for a factfinder to reach a verdict based on actual, not constructive, possession. And, in fact, the jury in this case was instructed on both constructive and actual possession, and the verdict form does not distinguish the theories.
Turning to defendant's arguments as to actual possession, defendant argues that in grounding the Second Amendment in the right of self-defense, Heller foreclosed any regulation of the possession of firearms, particularly handguns, in the home for the purposes of self-defense. As defendant argues, "Any statute that makes it impossible for citizens to have access to and use a loaded firearm for the 'core lawful purpose' of self-defense within a home is unconstitutional and precluded by the unequivocal text of the Second Amendment." Defendant paints with too broad a brush.
Heller itself specifically admonishes against the reading defendant proffers:
"Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."
Heller , 554 U.S. at 626-27, 128 S.Ct. 2783. The Court reasserted that holding in McDonald v. City of Chicago , 561 U.S. 742, 786, 130 S.Ct. 3020, 177 L.Ed.2d 894 (2010), noting that "[w]e made it clear in Heller that our holding did not cast doubt on such *434 longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.' * * * We repeat those assurances here."
In the wake of Heller , numerous facial challenges to felon in possession statutes were raised nationwide. No state law banning felons from possessing guns has ever been struck down. See United States v. Yancey , 621 F.3d 681, 685 (7th Cir. 2010) (per curiam) (citing Adam Winkler, Scrutinizing the Second Amendment , 105 Mich. L.Rev. 683, 721 (2007) ). Additionally, no federal ban on felons possessing guns has been struck down in the wake of Heller .
The restriction on the possession of firearms by a felon has a well-established, historical, and obvious relationship to public safety. Even under intermediate scrutiny,[2] ORS 166.270 is substantially related to an important governmental objective. And, contrary to defendant's assertions, that conclusion does not change when the felon's possession is in the home. Defendant fails to account for the fact that, if the legislature can determine that having felons in possession of weapons has an obvious relationship to public safety-which it can-then that safety extends to the home. In Skoien, the Seventh Circuit sitting en banc noted, for example, that it is established "[t]hat firearms cause injury or death in domestic situations" and that "[d]omestic assaults with firearms are approximately twelve times more likely to end in the victim's death than are assaults by knives or fists."
*545 Skoien , 614 F.3d at 643 (citing Linda E. Saltzman, James A. Mercy, Patrick W. O'Carroll, Mark L. Rosenberg & Philip H. Rhodes, Weapon Involvement and Injury Outcomes in Family and Intimate Assaults , 267 J.Am. Med. Assn. 3043 (1992) ). The court also noted that "[t]he presence of a gun in the *435 home of a convicted domestic abuser is 'strongly and independently associated with an increased risk of homicide.' " Id . (quoting Arthur L. Kellermann et al ., Gun Ownership as a Risk Factor for Homicide in the Home , 329 New England J.Med. 1084, 1087 (1993) ).
In short, the safety risk posed by the possession of firearms by felons does not disappear at the threshold to the home. If anything, that risk can escalate. As such, defendant's categorical assertion that no governmental restriction on the possession of a firearm by a felon in the home is permissible, fails.[3] Accordingly, the trial court properly denied the motions for judgment of acquittal.
Affirmed.

Defendant also raises assignments of error regarding the denial of a motion to dismiss, and a challenge to the trial court denial of defense special requested jury instructions. We reject those assignments without discussion.

A footnote in Heller indicates that rational basis is no longer an appropriate test in Second Amendment cases. See Heller , 554 U.S. at 628 n.27, 128 S.Ct. 2783 ("If all that was required to overcome the right to keep and bear arms was a rational basis, the Second Amendment would * * * have no effect."). In a case decided after Heller and McDonald , the Seventh Circuit Court of Appeals utilized an "intermediate scrutiny" analysis and applied it to a constitutional challenge to a federal law prohibiting an individual convicted of misdemeanor domestic violence from carrying a firearm in or affecting interstate commerce. See United States v. Skoien , 614 F.3d 638, 639-42 (7th Cir. 2010) (en banc). Under this test, a law "is valid only if substantially related to an important governmental objective." Id. at 641. We see no justification for utilizing anything more than that standard.

We note that defendant has not advanced an argument that the application of ORS 166.270 to him is unconstitutional because of his personal characteristics, or the specific facts of his felony conviction, i.e. , that the facts of his crime lack an indication of violence.