Argued and submitted March 17, affirmed June 7, petition for review denied
November 2, 2023 (371 Or 511)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RUDY NINO PARRAS,
*Defendant-Appellant.*

Crook County Circuit Court
19CR11103; A174543

531 P3d 711

Defendant was convicted of being a felon in possession of a firearm under ORS 166.270. He moved for a judgment of acquittal, arguing that ORS 166.270 is unconstitutional, as applied to him, because the right to bear arms is a fundamental right subject to strict scrutiny and his underlying felonies were "nonviolent" felonies. He contends that, under *New York Rifle & Pistol Assn. v. Bruen*, 597 US ___, 142 S Ct 2111, 213 L Ed 2d 387 (2022), the Second Amendment to the United States Constitution covers his conduct and no "historical precedent *** evinces a comparable tradition of regulation." *Id.* at 2131-32. This appeal required the Court of Appeals to consider, given *Bruen*, whether ORS 166.270 remains constitutional as applied to defendant's conduct. *Held*: ORS 166.270 is consistent with our nation's history of regulating firearms. As the court held previously in *State v. Shelnutt*, 309 Or App 474, 483 P3d 53, *rev den*, 368 Or 206 (2021), and *State v. Beeman*, 290 Or App 429, 434 n 2, 417 P3d 541, *rev den*, 363 Or 119 (2018), prohibitions on the possession of firearms by people convicted of felonies are firmly rooted in our nation's history and therefore constitutional under the Second Amendment. There is little historical evidence that any differentiation was made between those who committed violent versus nonviolent offenses with respect to Second Amendment protections.

Affirmed.

Daina A. Vitolins, Judge.

Erik M. Blumenthal, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

In *District of Columbia v. Heller*, 554 US 570, 128 S Ct 2783, 171 L Ed 2d 637 (2008), the United States Supreme Court concluded that the Second Amendment to the United States Constitution protects the rights of individuals to possess firearms for self-protection. After *Heller*, courts across the country followed a two-part analysis for determining whether a law prohibiting possession of a firearm survived a Second Amendment challenge. Following that test, we rejected an as-applied Second Amendment challenge to ORS 166.270, which prevents people convicted of felonies from possessing firearms. *State v. Shelnutt*, 309 Or App 474, 483 P3d 53, *rev den*, 368 Or 206 (2021); *see also State v. Beeman*, 290 Or App 429, 434 n 2, 417 P3d 541, *rev den*, 363 Or 119 (2018) (rejecting a facial challenge to ORS 166.270 under *Heller*).

The United States Supreme Court then decided *New York Rifle & Pistol Assn. v. Bruen*, 597 US ___, 142 S Ct 2111, 213 L Ed 2d 387 (2022). That decision modified the two-part test that courts followed after *Heller* for determining whether a restriction on firearms comports with the Second Amendment. After *Bruen*, a restriction on firearm possession is constitutional only if it is consistent with the nation's history of firearm regulation.

This appeal requires us to consider, given *Bruen*, whether ORS 166.270 remains constitutional. Defendant was charged with a felon in possession of a firearm. He moved for a judgment of acquittal, arguing that under *Heller*, ORS 166.270 is unconstitutional as applied to him. The trial court denied that motion and defendant appealed. During the course of the appeal, the Supreme Court issued *Bruen*. Given *Bruen*'s analytical framework, the question that we now have to answer is whether ORS 166.270 is consistent with our nation's history of regulating firearms. We conclude that it is. As we have noted previously in *Beeman* and *Shelnutt*, prohibitions on the possession of firearms by people convicted of felonies are firmly rooted in our nation's history and therefore constitutional under the Second Amendment. We therefore affirm the trial court's denial

of defendant's motion for a judgment of acquittal that challenged ORS 166.270's application to him.[1]

## LEGAL BACKGROUND

To understand the impact of *Bruen*, we begin with *Heller*. In *Heller*, the Court struck down a law that banned possession of handguns in the home and that required other kinds of firearms to be disassembled or bound by a trigger lock. The Court observed that the core of the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 US at 653. Although the Second Amendment confers an individual right to keep and bear arms, the right is "not unlimited." *Id.* at 595, 626. The Court specifically highlighted bans on felons in possession of firearms as one such permissible—indeed, "longstanding"—limitation:

> "From Blackstone through the 19th-century cases, commentators and courts routinely explained that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose. For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."

---

[1] After *Bruen*, defendant filed a motion to file a supplemental brief. We allowed that motion. In his supplemental brief, defendant added a new argument, claiming that ORS 166.270 was *facially* unconstitutional. Defendant's newly raised argument is unpreserved, inasmuch as defendant expressly told the trial court that he did not "want to venture too far into making a facial challenge" to the statute. Although defendant asserts there is little difference—at least for preservation purposes—between an as applied and facial challenge, we disagree. *See, e.g.*, *State v. Sparks*, 336 Or 298, 303 n 4, 83 P3d 304, *cert den sub nom Sparks v. Oregon*, 543 US 893 (2004) ("Defendant *** attacks the facial constitutionality of the future dangerousness question, set out in ORS 163.150(1)(b)(B) ***. Because defendant did not preserve those arguments and they do not qualify as error apparent on the face of the record, we do not address them.").

*Id.* at 626-27 (internal citations omitted). The Court further described such limits as being "presumptively lawful regulatory measures." *Id.* at 627 n 26;[2] *see also McDonald v. City of Chicago*, 561 US 742, 786, 130 S Ct 3020, 177 L Ed 2d 894 (2010) ("We made it clear in *Heller* that our holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons and the mentally ill,' 'laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms.' We repeat those assurances here." (Internal citation omitted.)).

Following *Heller*, courts created a two-step analysis to determine whether statutes restricting the use and possession of firearms pass constitutional muster under the Second Amendment. *Bruen*, 142 S Ct at 2126-27; *Beeman*, 290 Or App at 434 n 2. At the first step, looking at the text and history of the Second Amendment, courts upheld regulations if the state "establish[ed] that the challenged law regulates activity falling outside the scope of the [Second Amendment] right as originally understood." *Bruen*, 142 S Ct at 2126. If not, courts then addressed a second question, assessing "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Id.* Courts applied strict scrutiny if the "core" Second Amendment right was burdened—such as self-defense—and, if not, courts applied intermediate scrutiny. *Id.* at 2126-27.

That is the approach we took post-*Heller* when faced with both facial and as-applied Second Amendment challenges to ORS 166.270. In *Beeman*, 290 Or App at 434, we rejected a facial challenge to ORS 166.270. We began by noting that *Heller* and *McDonald* both took care to note that their holdings could not be read to "cast doubt" on longstanding prohibitions on the possession of firearms by people convicted of felonies. *Beeman*, 290 Or App at 434; *see also Heller*, 554 US at 626-27; *McDonald*, 561 US at 786. We

---

[2] In his dissent, Justice Stevens underscored the fact that *Heller* "limits the protected class to 'law abiding, responsible citizens.'" 554 US at 644 (Stevens, J., dissenting).

went on to observe that "[t]he restriction on the possession of firearms by a felon has a well-established, historical, and obvious relationship to public safety." *Beeman*, 290 Or App at 434. We applied an intermediate scrutiny standard and concluded that ORS 166.270 is "substantially related to an important governmental objective." *Id.*

In reaching that conclusion, we noted that our decision was consistent with those around the country after *Heller*, upholding (in the facial challenge context) challenges to felon in possession prohibitions:

> "In the wake of *Heller*, numerous facial challenges to felon in possession statutes were raised nationwide. No state law banning felons from possessing guns has ever been struck down. *See United States v. Yancey*, 621 F3d 681, 685 (7th Cir 2010) (per curiam) (citing Adam Winkler, *Scrutinizing the Second Amendment*, 105 Mich L Rev 683, 721 (2007)). Additionally, no federal ban on felons possessing guns has been struck down in the wake of *Heller*."

*Id.*

We subsequently rejected an as-applied challenge to ORS 166.270 in *Shelnutt*. The defendant in *Shelnutt* had previously been convicted of possession of methamphetamine and was barred from possessing firearms. After being charged under ORS 166.270, the defendant argued that to bar her from possessing a firearm based on that predicate "non-violent" felony violated her Second Amendment rights. In the context of the defendant's demurrer to her indictment, we concluded that she had not "sufficiently demonstrated that the underlying crime or her circumstances are outside those historically excluded from the right to bear arms" such that ORS 166.270 violated her rights under the Second Amendment. *Shelnutt*, 309 Or App at 478.

As we had in *Beeman*, we surveyed cases from other courts that addressed, post-*Heller*, challenges to prohibitions on the possession of firearms by people convicted of felonies, this time in the as-applied context. We noted that post *Heller*, "'[a]s-applied challenges have fared only marginally better [than facial challenges ***], and no circuit has held the [federal dispossession statute] unconstitutional as applied to a convicted felon.'" *Shelnutt*, 309 Or App at

478 (quoting *Medina v. Whitaker*, 913 F3d 152, 155 (DC Cir 2019), *cert den sub nom Medina v. Barr*, ___ US ___, 140 S Ct 645 (2019)).

Many of those decisions, like *Medina*, traced the history of prohibitions on the possession of firearms by people convicted of felonies. Although we discuss that history in much greater detail below—because *Bruen* insists that history is the only consideration in determining the constitutionality of restrictions on firearm possession—courts routinely highlighted Second Amendment history establishing that the provision was intended only to protect the rights of "virtuous citizens" and that the government could, accordingly, disarm "unvirtuous citizens." *Medina*, 913 F3d at 159; *see also*, *e.g.*, *Folajtar v. Barr*, 980 F3d 897 (3rd Cir 2020) (recognizing that many scholars, as well as its sibling courts, have agreed with the "virtuous citizen" reasoning for permitting governments to disarm "unvirtuous citizens").

Thus, after *Heller* and *McDonald*, courts—including our own—routinely held that prohibitions on the possession of firearms by people convicted of felonies were permissible under the Second Amendment.

Then came *Bruen*. As the Court framed it, the question in *Bruen* was whether "ordinary, law-abiding citizens have a [right] to carry handguns publicly for their self-defense." 597 US at ___, 142 S Ct at 2122. The Court observed the pattern that had emerged post-*Heller* of courts using a two-step framework for analyzing Second Amendment challenges and "decline[d] to adopt that two-part approach." *Id.* at 2126. The Court concluded that although "[s]tep one of the predominant framework is broadly consistent with *Heller*, which demands a test rooted in the Second Amendment's text, as informed by history[,] *** *Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context." *Id.* at 2127.

Instead, "in keeping with *Heller*," "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify [a state's] regulation, *** the regulation [must be] consistent with this Nation's historical tradition of firearm regulation.

Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 597 US at ___, 142 S Ct at 2126.

Justice Alito, in his concurrence, specifically noted that the Court's holding "decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun. Nor does it decide anything about the kinds of weapons that people may possess. Nor have we disturbed anything that we said in *Heller* or [*McDonald*] about restrictions that may be imposed on the possession or carrying of guns." *Bruen*, 597 US at ___, 142 S Ct at 2157 (Alito, J., concurring); *see also id.* at 2161 ("*Heller* correctly recognized that the Second Amendment codifies the right of ordinary law-abiding Americans to protect themselves from lethal violence by possessing and, if necessary, using a gun.").

Notably, *Bruen* was replete with references to the Second Amendment as protecting the rights of "law-abiding citizens," a point that, as we describe below, is important to our consideration whether the Second Amendment prohibits felon-in-possession-of-firearm bans. Indeed, the Court described the Second Amendment as protecting the rights of "law-abiding citizens" no fewer than 10 times. *See, e.g.*, *Bruen*, 597 US at ___, 142 S Ct at 2122 ("[T]he Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."); *id.* ("[O]rdinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense."); *id.* at 2125, 2134 (describing petitioners as "law-abiding, adult citizens"); *id.* at 2133 (describing New York's argument that "sensitive places where the government may lawfully disarm law-abiding citizens include all places where people typically congregate" (internal quotation marks omitted)); *id.* at 2135 n 8 ("[I]n light of the text of the Second Amendment, along with the Nation's history of firearm regulation, we conclude below that a State may not prevent law-abiding citizens from publicly carrying handguns because they have not demonstrated a special need for self-defense."); *id.* at 2138 ("Nor is there any such historical

tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense."); *id.* at 2150 (noting that "none [of the historical regulations surveyed] operated to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose"); *id.* at 2156 ("Nor, subject to a few late-in-time outliers, have American governments required law-abiding, responsible citizens to demonstrate a special need for self-protection distinguishable from that of the general community in order to carry arms in public." (Internal quotation marks omitted.)).

In sum, under *Bruen*, assuming a restriction on firearm possession falls within the ambit of the Second Amendment, that restriction is constitutional only if it is consistent with our nation's history of regulating firearms. With that singular focus on history, many courts have examined (or reexamined) the history around the Second Amendment in the context of prohibitions on the possession of firearms by people convicted of felonies. Of course, as one court noted, "[d]eciphering history is always a fraught enterprise[.]" *United States v. Smith*, No 22-CR-20351, 2023 WL 2215779 at *4 (ED Mich Feb 24, 2023). That is in part because "[a]n honest search for an 'American' tradition on gun regulation is especially challenging, given that well over half of the American population—including women, Blacks, and others—were generally excluded by law from political participation at the time of the Second Amendment's passage and for decades thereafter." *Id.* at 10.

That said, "[n]o matter how difficult the investigation of relevant Second Amendment history may be in other contexts, the conclusion is clear that disarming persons deemed dangerous has been grounded in the heartland of acceptable gun regulation since our Nation's founding." *Id.*[3] Indeed, the Oregon Supreme Court observed as much after

---

[3] In fact, people convicted of felonies are prevented from engaging in other activities protected by the constitution—such as voting, holding public office, and becoming professionally licensed. *See Richardson v. Ramirez*, 418 US 24, 94 S Ct 2655, 41 L Ed 2d 551 (1974) (revocation of voting rights); *De Veau v. Braisted*, 363 US 144, 80 S Ct 1146, 4 L Ed 2d 1109 (1960) (proscription against holding office in a waterfront labor organization); *Hawker v. New York*, 170 US 189, 18 S Ct 573, 42 L Ed 1002 (1898) (prohibition against the practice of medicine).

conducting an extensive historical excavation of the Second Amendment and its origins in assessing whether a felon in possession of a weapon prohibition was consistent with the state constitution. *State v. Hirsch/Friend*, 338 Or 622, 114 P3d 1104 (2005), *overruled on other grounds by State v. Christian*, 354 Or 22, 307 P3d 429 (2013).[4] There, the Supreme Court traced the historical context of Article I, section 27, of the Oregon Constitution and in doing so, examined the adoption of the Second Amendment. The court noted that the framers of the United States Constitution considered those who committed crimes to be outside of the right to bear arms: "[T]he general view of the framers of the Second Amendment that a certain criminal element—notably, 'outlaws' using weapons or otherwise committing injurious crimes against person and property—occupied a lesser status in the community than the responsible, law-abiding citizenry, particularly respecting the bearing of arms." *Id.* at 672. Additionally,

> "the political view of the 'virtuous citizen,' also prevalent at the time of the founding, suggested that the right to bear arms carried with it the responsibility for upstanding citizenship, which in turn required the willing taking up of arms both to hunt down and to defend against those who threatened the safety of the community. Under that view, as many scholars and commentators have concluded, upon violating the social compact between the citizenry and society—and, simultaneously, the duty to act as a virtuous citizen—by committing serious crime, the lawbreaker's right to bear arms is subject to restriction."

*Id.* at 676.

That concept of virtuous citizenry is consonant with the repeated references in *Heller* and *Bruen* to the Second Amendment protecting the possession of firearms by "law-abiding" citizens and characterizing bans on felons in possession of firearms as "longstanding" and "presumptively lawful[]." *Heller*, 554 US at 625-26, 627 n 26. It is also consonant with the historical assessments that courts have engaged in, post-*Bruen*, in upholding restrictions on felons

---

[4] Although the court decided *Hirsch/Friend* before *Bruen*, its discussion of the Second Amendment's history nevertheless remains relevant, perhaps even more so given *Bruen*'s emphasis on history.

in possession of firearm bans; each has concluded that the weight of tradition and history shows that the framers of the constitution would have understood that those who commit felonies would not fall within the protections of the Second Amendment.[5]

Furthermore, there is no historical basis for distinguishing between types of felonies based on whether they were violent or nonviolent. Although, as the state acknowledges, there appears to be no eighteenth or nineteenth century laws prohibiting the possession of firearms by people convicted of felonies, the historical record is replete with evidence that those who were not law abiding—without reference to violent or nonviolent acts—were not entitled to the protection of the Second Amendment. Based on that history, courts have by and large rejected that distinction.[6]

---

[5] *See, e.g.*, *United States v. Coombes*, No 22-CR-00189-GKF, 2022 WL 4367056 at *7 (ND Okla Sep 21, 2022); *United States v. Carrero*, No 2:22-cr-00030, 2022 WL 9348792 at *3 (D Utah Oct 14, 2022); *Campiti v. Garland*, No 3:22-cv-177 (AWT), 2023 WL 143173 at *4 (D Conn Jan 10, 2023); *Fooks v. State*, 255 Md App 75, 103-04, 278 A3d 208, *cert granted*, 482 Md 141, 285 A3d 848 (2022).

[6] *See, e.g.*, *Carrero*, No. 2:22-cr-00030, 2022 WL 9348792 at *7 (rejecting challenge to felon in possession prohibition as applied to a defendant convicted of distribution of narcotics); *Fooks*, 255 Md App at 95 ("The fact that constructive criminal contempt 'contains no elements of violence' proves nothing by itself. *** [T]here is no requirement that an individual be convicted of a violent crime to be prohibited from possessing a firearm."); *United States v. Jackson*, No. 21-51 (DWF/TNL), 2022 WL 4226229 at *5-6 (D Minn Sept 13, 2022) (upholding felon in possession prohibition as applied to defendant convicted of prior felonies that "were nonviolent" but "involved dangerous conduct[,]" including involved drugs, the unlawful possession of a firearm, and drug trafficking); *United States v. Pruess*, 703 F3d 242, 247 (4th Cir 2012) ("We now join our sister circuits in holding that application of the felon-in-possession prohibition to allegedly nonviolent felons *** does not violate the Second Amendment."); *United States v. Barton*, 633 F3d 168, 174 (3d Cir 2011), *overruled in part by Binderup v. AG of the United States*, 836 F3d 336 (3d Cir 2016) (rejecting challenge to felon in possession statute for person convicted of felonies for prior drug and receipt of stolen weapons); *United States v. Vongxay*, 594 F3d 1111, 1113-14 (9th Cir 2010) (same for felon with only prior non-violent car burglary and drug possession convictions); *United States v. Skoien*, 614 F3d 638, 640 (7th Cir 2010) ("disqualification to non-violent felons (embezzlers and tax evaders, for example) is presumptively constitutional"). *But see United States v. Harrison*, No CR-22-00328-PRW, 2023 WL 1771138 at *3 (WD Okla Feb 3, 2023) (finding constitutional violation in case of a statute prohibiting possession of a firearm by someone who was "an unlawful user of marijuana"); *Folajtar v. AG of the United States*, 980 F3d 897, 911 (3d Cir 2020) (holding out the possibility of an "exceptional federal or state felony unmoored from the bar's historical underpinnings" but concluding that a person could be dispossessed of the right to bear arms for felony tax evasion).

APPLICATION

With that historical framework in mind, we turn to defendant's challenge to ORS 166.270. At the outset, we agree with defendant that the Second Amendment's plain text covers defendant's possession of a firearm. *Bruen*, 597 US at ___, 142 S Ct at 2129-30 (if the Second Amendment's plain text covers the defendant's conduct, the Constitution "presumptively" covers that conduct). Thus, we must consider whether ORS 166.270 is nevertheless consistent with the "historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 597 US at ___, 142 S Ct at 2127.

Based on the history set forth above, we readily conclude that the answer is yes.[7] The weight of historical evidence shows that it was understood that individuals could be divested of Second Amendment protections if they broke the social contract of being a virtuous citizen by committing a serious crime. While it may be true that prohibitions on the possession of firearms by people convicted of felonies did not exist at the time of the framing of the Second Amendment, the concept that those who committed serious crimes were historically not entitled to Second Amendment protections did exist at the time of the framing. We thus conclude that ORS 166.270 is consistent with "this Nation's historical tradition of firearm regulation." *Bruen*, 597 US at ___, 142 S Ct at 2126.

For his part, defendant argues that ORS 166.270 is unconstitutional as applied to him because his underlying felonies, manufacture and possession of methamphetamine, were "non-violent" offenses. Defendant asserts that even if the Second Amendment does not ensure to those who commit felonies the right to possess firearms, that is true only for those who have committed "violent" felonies. Even assuming that the underlying premise of defendant's argument is

_____

[7] In their initial briefs, filed before *Bruen* was decided, the parties disputed who, in the context of a motion for judgment of acquittal, carries the burden to show that the statute cannot be constitutionally applied to defendant. To some extent, *Bruen* appears to resolve that dispute, inasmuch as it requires that "the government *** demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 142 S Ct at 2126. Ultimately, however, we conclude that the burden does not affect the outcome here.

correct—that his convictions for manufacture and posses-
sion of methamphetamine were "non-violent" felonies—as
described above, it was generally understood that those who
were not "virtuous" and law abiding fell outside the protec-
tions of the Second Amendment. There is little historical
evidence that any differentiation was made between those
who committed serious violent versus non-violent offenses
with respect to Second Amendment protections.[8]

      We thus conclude that the application of ORS
166.270(1) to defendant based on his felony convictions did
not infringe on constitutionally protected conduct and did
not violate the Second Amendment.

      Affirmed.

---

[8] Defendant's as-applied challenge does not require us to resolve the full
scope of what offenses may have disqualified someone from being "virtuous" or
"law abiding" for purposes of the Second Amendment, other than to reject defen-
dant's distinction between violent and nonviolent offenses.