**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**No. 19-4596**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RONALD COLLINS,

Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Beckley.  Irene C. Berger, District Judge.  (5:18-cr-00068-1)

Argued:  October 30, 2020                      Decided:  December 3, 2020

Before WILKINSON, MOTZ, and KING, Circuit Judges.

Affirmed by published opinion.  Judge Motz wrote the opinion, in which Judge Wilkinson and Judge King joined.

**ARGUED:**  Shawn Angus Morgan, STEPTOE & JOHNSON, PLLC, Bridgeport, West Virginia, for Appellant.  Louie Alexander Hamner, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.  **ON BRIEF:**  Michael B. Stuart, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

DIANA GRIBBON MOTZ, Circuit Judge:

A jury convicted Ronald Collins of making false statements on an ATF form and possessing a firearm after being "adjudicated as a mental defective." He challenges only his firearm conviction. Collins claims that *Rehaif v. United States*, 139 S. Ct. 2191 (2019), renders the indictment and jury instructions deficient, that the conviction runs afoul of the Second Amendment, and that the district court imposed an unreasonable sentence. Each contention fails. Accordingly, we affirm the judgment of the district court.

I.

A.

In 2013, officers in Raleigh County, West Virginia, arrested Collins for making terroristic threats to a police officer. While in custody, Collins threatened to kill a state court judge and the prosecuting attorney. At a state court hearing, the judge instructed Collins to submit to a competency evaluation. The doctor found that Collins had bipolar disorder. Following this evaluation, the court concluded that the State had proven by a preponderance of the evidence that Collins was "psychotic with paranoia in the context of irrational grandiosity" and so incompetent to stand trial. The court also found a substantial likelihood that Collins could be restored to competency following inpatient commitment. The court ordered that Collins be transported to Sharpe Hospital, where he would stay until his competency was restored. *See* W. Va. Code § 27-6A-3(f).

Collins remained at Sharpe Hospital for six months. In November 2014, the state court found he had become competent to stand trial and ordered him released from Sharpe

Hospital. On September 11, 2015, prosecutors agreed to dismiss the charges against Collins.

B.

On January 6, 2018, Collins completed an ATF Form 4473 in order to purchase a 9-milimeter handgun. On the ATF form, in response to a question asking whether he had "ever been adjudicated as a mental defective" or "ever been committed to a mental institution," Collins checked the box under "No." After a three-day waiting period, he obtained the handgun.

A month later, the West Virginia State Police received a 911 call about a man carrying a rifle in public. Trooper John Gilkeson found Collins walking on the side of a road with what appeared to be a rifle (but turned out to be a BB gun). Trooper Gilkeson ordered Collins to put the weapon down, handcuffed him, and asked if he had any other weapons on him. Collins responded that he did, and Trooper Gilkeson found the loaded handgun in his pocket. Trooper Gilkeson performed a criminal history check, which did not turn up any convictions, and permitted Collins to leave with the handgun.

Later that day, Trooper Gilkeson learned that an ATF agent had been looking for Collins because Collins was, in fact, prohibited from possessing a gun. Trooper Gilkeson then obtained a search warrant for Collins's residence and recovered the handgun. Police subsequently arrested Collins.

A grand jury indicted Collins on one count of making "a false and fictitious written statement on ATF Form 4473" in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(2) (Count One), and one count of possessing a firearm by a person who has been adjudicated as a

3

mental defective or committed to a mental institution, in violation of 18 U.S.C. §§ 922(g)(4) and 924(a)(2) (Count Two). Collins moved to dismiss the indictment and to strike that he had been "adjudicated as a mental defective" from Count Two. The district court granted the motion to strike the words "adjudicated as a mental defective" from the indictment but denied the motion to dismiss. A one-day trial was held on March 11, 2019; the jury returned a verdict of guilty as to both counts. The district court sentenced Collins to 60 months imprisonment and three years of supervised release. Collins now appeals.

## II.

Collins primarily makes two challenges to his firearms conviction (Count Two) based on the Supreme Court's recent decision in *Rehaif v. United States*. In *Rehaif*, the Court expanded the knowledge requirement in § 922(g), holding that the Government must prove that the defendant not only knew that he possessed a firearm, but also that he knew he belonged to a class of persons barred from possessing that firearm. 139 S. Ct. at 2200. The Supreme Court issued *Rehaif* on June 21, 2019 — after the jury had convicted Collins on March 12, 2019, but before the court sentenced him on August 14, 2019. Collins challenges both the indictment and the jury instructions on the ground that they omitted the knowledge-of-status element recognized in *Rehaif*. We consider each of these arguments in turn.

### A.

We review the sufficiency of the indictment for plain error because Collins did not challenge it before the district court. *See United States v. Cotton*, 535 U.S. 625, 631 (2002).

4

Plain-error review requires that a defendant establish (1) an error; (2) that is plain; and (3) that affects his substantial rights. *United States v. Olano*, 507 U.S. 725, 732 (1993). To affect substantial rights, the error must "have been prejudicial" and have "affected the outcome of the district court proceedings." *Id*. at 734. Only if a defendant establishes these three elements can we grant discretionary relief. We may do so when the defendant is "actually innocent" or the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id*. at 736 (citations omitted).

Here, Collins has established the first two plain-error requirements. The indictment erroneously did not instruct on the knowledge-of-status element in Count Two, as *Rehaif* requires. This error is "plain" because it is "clear or obvious at the time of appellate consideration." *United States v. Ramirez-Castillo*, 748 F.3d 205, 215 (4th Cir. 2014) (internal quotation marks and citations omitted).

But Collins's argument fails at *Olano*'s third prong because he cannot show that the error was prejudicial. The Government charged Collins with two crimes: the false statements crime in Count One and the firearms crime in Count Two. Count One alleged that Collins knowingly made a false statement that he had never been committed to a mental institution. To establish this, the Government presented ample evidence at trial that Collins knew that he had been committed to a mental institution.

Indeed, Collins himself testified that he was the subject of an order involuntarily committing him to a mental institution, Sharpe Hospital. He discussed going to Sharpe Hospital after the court hearing and acknowledged that he did not go on his "own free will." The court order committing him to Sharpe Hospital was admitted into evidence. The

5

Government also offered a complaint Collins previously filed against the West Virginia prosecutor in his terroristic threats case that clearly evinced Collins's knowledge that he had been committed to Sharpe Hospital. Collins's lawsuit centered on the events leading to his commitment and stated that they "resulted in me being held at William H. Sharpe[] Hospital."

Because the jury found that Collins knowingly lied about whether he had been committed to a mental institution as alleged in Count One, the Government's failure to separately allege Collins's knowledge of his commitment in Count Two could not have altered the jury's verdict as to Count Two. Thus, Collins has not shown "a reasonable probability that, but for the error, the outcome of the proceeding would have been different." *Molina-Martinez v. United States*, 136 S. Ct. 1338, 1343 (2016) (internal quotations marks and citation omitted).[1] Accordingly, he has failed to demonstrate that the erroneous omission of the knowledge-of-status element in Count Two caused any prejudice, as required by *Olano*.

Our recent holding in *United States v. Medley*, 972 F.3d 399 (4th Cir. 2020), *reh'g en banc granted*, No. 19-4789 (4th Cir. Nov. 12, 2020), does not alter this conclusion. In *Medley*, we held that the Government's failure to include *Rehaif*'s knowledge-of-status element in an 18 U.S.C. § 922(g)(1) charge amounted to plain error. *Id*. at 410–11. Because the indictment entirely omitted this element, we reasoned, Medley "did not receive

---

[1] Collins also appears to challenge the sufficiency of the evidence, arguing that the evidence does not prove that he knew he had been involuntarily committed, as required after *Rehaif*. But as explained above, the Government presented ample evidence that Collins knew of his status.

6

(even constructive) notice; nor did he receive a sufficient description of the accusations against him," which we held necessary to satisfy "*Olano*'s third prong." *Id*.

In contrast, Collins had notice of the accusations against him and a description of these accusations. In Count One, the indictment alleged that Collins "did in connection with the acquisition of a firearm knowingly make a false and fictitious written statement on ATF Form 4473," referring to his false statement that he had not been committed. The allegation (and evidence) that Collins knowingly made this false statement mandates the conclusion that Collins was provided with notice of the accusations against him and a description of those allegations.

Moreover, the omission of the knowledge-of-status element in Count Two did not "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736 (internal quotation marks omitted). In the context of the false statements charge, Collins had the opportunity to — and did in fact — fully litigate whether he knew he had been involuntarily committed. At trial, Collins's testimony centered on whether he knowingly lied on the ATF form. He repeatedly claimed that he did not believe that he had made a false representation on the form, a claim that the jury rejected.[2] But Collins never contended that he had not been committed.

---

[2] Collins does seem to suggest that, because he assertedly did not know his temporary commitment order would prohibit him from possessing a firearm, he did not know of his status under § 922(g)(4). He bases this suggestion not on a contention that he did not know of his status as a person who had been involuntarily committed, but rather that he did not know that his commitment prohibited him from possessing a firearm. This is a mistake of law argument, which is not a valid defense. *See Lambert v. People of the State of California*, 355 U.S. 225, 228 (1957).

7

Because Collins had notice of the allegations against him and has not demonstrated that the outcome of the proceedings would have been different without the indictment error, his challenge to the indictment cannot survive plain-error review.

B.

Collins also argues that the district court committed reversible error in failing to instruct the jury on *Rehaif*'s knowledge-of-status element. When, as here, a district court erroneously omits an element of an offense from jury instructions, we reverse only if an error results in harm to the defendant. *Neder v. United States*, 527 U.S. 1, 4 (1999). An error is harmless when it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman v. California*, 386 U.S. 18, 24 (1967). In *United States v. Brown*, we explained that we can conclude an error caused no harm when a "jury necessarily made th[e] findings notwithstanding the omission." 202 F.3d 691, 700 (4th Cir. 2000) (emphasis omitted); *see also Medley*, 972 F.3d at 413.

Such is the case here. With respect to Count One, the district court instructed the jury that it must find both (1) "that the written statement indicating that the defendant has never . . . been committed to a mental institution, was false" and (2) "that the defendant knew such statement was false at the time it was given." The jury found, beyond a reasonable doubt, Collins guilty under Count One. In doing so it necessarily found that Collins knew he had been committed to a mental institution, satisfying the knowledge-of-status element in Count Two.

8

III.

Collins next contends that § 922(g)(4) as applied to him violates the Second Amendment. We review such constitutional claims *de novo*. *See United States v. Pruess*, 703 F.3d 242, 245 (4th Cir. 2012).

In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment protects the right to bear arms for conduct falling within its scope. 554 U.S. 570, 626–27 (2008); *see also United States v. Chester*, 628 F.3d 673, 680 (4th Cir. 2010) (noting that the threshold question under *Heller* is whether the statute regulates conduct that comes within the scope of the Second Amendment). *Heller* emphasized that regulations prohibiting the mentally ill from possessing firearms are "presumptively lawful." 554 U.S. at 626–27 & n.26. When a party makes an as-applied claim to a presumptively lawful firearms regulation, he "must show that his factual circumstances remove his challenge from the realm of ordinary challenges." *Hamilton v. Pallozzi*, 848 F.3d 614, 624 (4th Cir. 2017) (quoting *United States v. Moore*, 666 F.3d 313, 320 (4th Cir. 2012)).

Collins contends that his commitment under W. Va. Code § 27-6A-3(f) does not fall within the realm of ordinary § 922(g)(4) challenges because a different West Virginia statute, W. Va. Code §§ 27-5-1 to -11, governs "final commitment proceedings." In *United States v. Midgett*, 198 F.3d 143 (4th Cir. 1999), we expressly rejected a similar argument. The defendant in *Midgett* claimed that § 922(g)(4) only encompassed confinement resulting from Virginia's formal civil commitment process, and not commitment to a mental institution for restoration of competency resulting from a court order. *Id*. at 145.

9

We held that commitment to restore a person to competency fell "squarely within any reasonable definition of 'committed' as used in § 922(g)(4)." *Id*. at 146. Collins's commitment to restore him to competency under W. Va. Code § 27-6A-3(f) similarly falls squarely within the definition of committed as used in § 922(g)(4). *Cf. Moore*, 666 F.3d at 316 (noting the "unanimous result reached by every court of appeals that § 922(g)(1) is constitutional, both on its face and as applied"). Accordingly, Collins's Second Amendment claim fails.

IV.

Finally, Collins maintains his sentence was procedurally and substantively unreasonable. We review a defendant's sentence "under a deferential abuse-of-discretion standard." *United States v. Brewer*, 520 F.3d 367, 372 (4th Cir. 2008). First, we review for procedural error, including "failing to consider the 18 U.S.C. § 3553(a) factors or failing to adequately explain the chosen sentence." *Id*. (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). If the sentence is procedurally sound, we then look to the substantive reasonableness of the sentence. *Id*. "Substantive reasonableness examines the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *United States v. Mendoza-Mendoza*, 597 F.3d 212, 216 (4th Cir. 2010).

Collins argues that his sentence was procedurally unreasonable because the district court failed to consider the reasons he proffered as to why he should receive a shorter sentence, like his repeated claims that he did not believe he was violating federal law by

10

possessing a firearm. To be sure, "a district court should address the party's arguments and explain why [it] has rejected those arguments." *United States v. Arbaugh*, 951 F.3d 167, 174 (4th Cir. 2020) (quoting *United States v. Carter*, 564 F.3d 325, 328 (4th Cir. 2009)). But here, the district court plainly did so. It thoroughly considered Collins's argument and rejected it, explaining that Collins continuously maintained that he had "the right to have a gun" and that he "did nothing wrong by lying on the firearms form in order to get that gun." The court concluded that Collins's "disagreement with the law does not excuse [him] from the obligation to follow it."

Collins argues that his sentence is substantively unreasonable because the district court deviated from the Sentencing Guidelines range and relied too much on certain factors while failing to consider others. The court imposed a 60-month sentence, significantly higher than his Guidelines range of 27 to 33 months. When a district court decides the appropriate sentence falls outside of the Guidelines' advisory range, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *United States v. Zuk*, 874 F.3d 398, 409 (4th Cir. 2017) (quoting *United States v. Morace*, 594 F.3d 340, 346 (4th Cir. 2010)).

The court did so here. It carefully explained its reasoning, referring to the § 3553(a) factors. The court noted that Collins continued to act as though he "did nothing wrong." The court reasoned that Collins's criminal record and mental health history reflected "violent ideation, threatening behavior, and a lack of respect for the law." The court also found that Collins posed a danger to the public, since he had "talked about murdering police officers, judges, and prosecutors" and had a "continuing interest in possessing weapons."

11

The court relied on Collins's past actions, like his assault of his former attorney, to conclude that the sentence imposed was necessary "to deter" Collins "to the extent that deterrence is possible and to protect the public." This extensive explanation demonstrated an appropriate exercise of discretion in weighing the relevant factors, rendering the sentence substantively reasonable.

## V.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.