**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 22-4007**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

DARYL LEE GODETTE, JR.,

        Defendant – Appellant.

**No. 22-4011**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

DARYL LEE GODETTE, JR.,

        Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Greenville and Elizabeth City. James C. Dever III, District Judge. **(**4:19-cr-00082-D-1; 2:10-cr-00015-D-2)

Submitted:  October 11, 2022                    Decided:  January 6, 2023

Before KING, THACKER, and QUATTLEBAUM, Circuit Judges.

———————————————

Affirmed by unpublished per curiam opinion.

———————————————

**ON BRIEF:**  Paul K. Sun, Jr., Kelly Margolis Dagger, ELLIS & WINTERS LLP, Raleigh, North Carolina, for Appellant. Kenneth A. Polite, Jr., Assistant Attorney General, Lisa H. Miller, Deputy Assistant Attorney General, Thomas E. Booth, Appellate Section, Criminal Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, Lucy P. Brown, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

———————————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Daryl Lee Godette, Jr. appeals his convictions for conspiracy to distribute heroin, 21 U.S.C. § 846, and possession with intent to distribute heroin, 21 U.S.C. § 841(a). On appeal, Godette attacks the sufficiency of the evidence supporting his conviction. Godette also raises various issues relating to the reasonableness of his sentence. For the reasons that follow, we affirm.

I.

In 2018, while on supervised release following his imprisonment for a prior drug conviction, Godette began selling heroin to Bobbie Jean Hoover for her own use and for resale to other users in Havelock, North Carolina. In July 2019, a confidential informant ("CI") advised the Havelock Police Department that Hoover was selling him drugs. On several occasions in July 2019, the Havelock Police Department directed the CI to buy heroin from Hoover under police supervision.

On July 17, the CI wore an audio/video recording device as part of a controlled buy. The Havelock Police gave the CI $220 for the purchase of one gram of fentanyl. Several law enforcement officers were detailed to a surveillance team to monitor the transaction. After picking Hoover up at a restaurant, the CI dropped her off a few blocks away near an apartment complex. A few minutes later, police officers observed Hoover walking out of the apartment complex. The surveillance team briefly lost track of Hoover but later saw her at a gas station nearby.

The surveillance team witnessed Godette arrive at the gas station in a silver Toyota Camry.[1] They also observed Hoover enter the Camry. After Hoover exited, the CI picked her up. The CI told the police that he used the $220 to buy .97 grams of heroin. At trial, Hoover testified that she gave Godette the $220 and he gave her heroin to sell to the CI.

On July 22, the Havelock police set up another controlled buy. The CI picked up Hoover and dropped her off at a location to obtain the heroin. At roughly the same time, a surveillance team, located at an apartment complex at 105B Kim Avenue, observed Godette exit an apartment from that same complex and get into the same silver Camry. Godette then met up with Hoover and dropped her off at the controlled buy location. The CI arrived at the location and paid $370 for 3.5 grams of heroin. The purchase was recorded on an audio/video device. Hoover testified at trial that she received the heroin from Godette.

On July 25, the CI picked up Hoover at her residence and drove her to a location near the 105B Kim Avenue apartment complex. A surveillance team witnessed Godette arrive at the location, use a key to enter the apartment, open the blinds and then exit the apartment shortly thereafter. Godette entered his vehicle and met up with Hoover. Godette dropped Hoover off at the buy location. The CI paid Hoover $470 for 3.5 grams of heroin. At trial, Hoover testified that she received the heroin from Godette.

---

[1] The Camry was registered to Godette's live-in girlfriend, Kimberly Nolan. The address on the registration, as well as Godette's address, was on Foxhall Avenue.

4

On July 31, the surveillance team saw Godette drive to the Kim Avenue apartment complex while Hoover was being picked up by the CI. Godette entered the apartment, opened the blinds, exited several minutes later, drove to a parking lot and entered a dark Toyota driven by a woman. Later, in exchange for $700, Godette gave Hoover seven grams of heroin to sell to the CI. Afterwards, Godette and the woman returned to the Kim Avenue apartment. Godette and the woman entered the apartment for a short time, exited and drove back to the same parking lot. Godette then got out of the Toyota, entered his vehicle, and drove to his residence on Foxhall Avenue.

On August 1, the surveillance team observed Godette drive to the Kim Avenue apartment, enter with a key, open the blinds, exit about 10 minutes later and drive to a local restaurant to meet Hoover. Around 90 minutes later, Godette returned to the Kim Avenue apartment, entered it and opened the blinds.

The following day, law enforcement obtained search warrants for Godette's residence on Foxhall Avenue and the Kim Avenue apartment. Prior to executing the search warrants, Havelock police officers observed Godette arrive at the Kim Avenue apartment. He entered the apartment, opened the door with a key and opened the blinds. A few minutes later, Godette came out of the apartment and got into his vehicle. Several Havelock police officers drove into the apartment complex's parking lot and activated their blue lights. The officers exited their vehicles with guns drawn. One officer approached the driver's side window and yelled at Godette. Godette then backed up into Kim Avenue. As he came to a stop, a police officer caught up with the car, beat on the window and yelled at Godette.

5

Godette drove off, striking one of the police officers with the vehicle's mirror. Ultimately, other law enforcement officers managed to stop and arrest Godette.

A search of Godette's vehicle revealed multiple utility bills addressed to Godette's girlfriend Nolan at the Foxhall address. In addition, the officers seized Godette's wallet which contained over $2,000 dollars, $560 of which was used during the controlled buys.

Inside the Kim Avenue apartment, the officers seized gloves, cutting agents, scales, a blender, a mask, 88.14 grams of heroin in a Quaker Oats container, 320.6 grams of heroin in a stuffed animal from a bedroom and 846 grams of heroin in a trunk from the upstairs bedroom closet. The apartment did not appear to be occupied. There was little furniture and no washer or dryer despite hookups for those appliances. The upstairs bedroom had two dressers, a bed frame against the wall, a disassembled bed or deflated air mattress on the floor and mail addressed to Nolan. Nothing of evidentiary value was obtained at the Foxhall Avenue address.

Godette was indicted for conspiracy to distribute heroin, in violation of 21 U.S.C. § 846 (Count 1); four counts of distributing heroin (Counts 2-5); and one count of possession with intent to distribute one kilogram of heroin, all in violation of 21 U.S.C. § 841(a) (Count 6). His case went to trial where the jury found Godette guilty on all counts. Also, on a special verdict form, the jury attributed 1 kilogram or more of heroin as to Counts 1 and 6.

Later, the district court sentenced Godette to concurrent terms of 360 months of imprisonment and 10 years of supervised release. In addition, because he was on supervised release for a previous conviction when he committed these crimes, the district court

revoked Godette's term of supervised release from that previous conviction and imposed a 57-month sentence consecutive to the 360-month sentence from the current crimes.

On appeal, Godette contends that (1) the government failed to present sufficient evidence showing that he constructively possessed the heroin stored at the Kim Avenue address for purposes of his convictions for Counts 1 and 6; (2) the district court erred in admitting undisclosed law enforcement expert testimony; (3) his 360-month sentence was procedurally and substantively unreasonable; and (4) his consecutive 57-month revocation sentence was plainly unreasonable.[2]

## II.

We begin with Godette's challenge to the sufficiency of the evidence for his convictions under Counts 1 and 6. We review challenges to the sufficiency of evidence de novo. *See United States v. Kelly*, 510 F.3d 433, 440 (4th Cir. 2007). In doing so, "our role is limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support" the conviction. *United States v. Beidler*, 110 F.3d 1064, 1067 (4th Cir. 1997) (internal citation and quotation marks omitted). In determining whether the evidence is substantial, we ask whether "a reasonable finder of fact could accept [the evidence] as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc). Importantly, we do not weigh the evidence or assess the credibility of witnesses

---

[2] We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

7

but assume that the jury resolved any discrepancies in favor of the government. *United States v. Romer*, 148 F.3d 359, 364 (4th Cir. 1998).

Section 841(a) provides, in relevant part, that "it shall be unlawful for any person knowingly or intentionally— (1) to . . . possess with intent to . . . distribute . . . a controlled substance . . . ." 21 U.S.C. § 841(a)(1). "[P]ossession may be actual or constructive, and it may be sole or joint." *United States v. Moody*, 2 F.4th 180, 189 (4th Cir. 2021) (citation omitted). Here, the government proceeded under a constructive possession theory with respect to the heroin at issue in Counts 1 and 6. Constructive possession requires "ownership, dominion, or control over the contraband or the premises or vehicle in which the contraband was concealed" and "knowledge of the presence of the contraband." *United States v. Herder*, 594 F.3d 352, 358 (4th Cir. 2010). It may be established by direct or circumstantial evidence, and the "fact finder may properly consider the totality of the circumstances surrounding the defendant's arrest and his alleged possession." *Id.*

But dominion and control cannot be established by mere proximity to the contraband, by mere presence on the property where the contraband is found or by mere association with the person who does control the contraband. *United States v. Brown*, 3 F.3d 673, 680 (3d Cir. 1993); *United States v. Rusher*, 966 F.2d 868, 878 (4th Cir. 1992). And "[i]n joint occupancy cases, there must be some additional nexus linking the defendant to the contraband." *United States v. Hall*, 858 F.3d 254, 280 (4th Cir. 2017) (citation omitted).

Godette relies on our decision in *United States v. Blue*, 808 F.3d 226 (2015), to support his argument that the evidence was insufficient to prove his guilt beyond a

8

reasonable doubt. He contends *Blue* compels the conclusion that no reasonable juror could find that he possessed the heroin found at the Kim Avenue apartment.

In *Blue*, the police observed the defendant enter an apartment building empty-handed and exit the building roughly five minutes later holding a sandwich-sized, cloudy white, plastic container. *Id.* at 229. The police did not see the defendant enter any specific apartment in the building. *Id.* They followed the defendant and saw him involved in what they suspected was a narcotics transaction. *Id.* The police arrested the defendant later that day, and, in searching him, found a key to an apartment in the building the police saw the defendant enter earlier that day. *Id.* at 230. The police then secured a search warrant for the apartment. Upon executing the search warrant, they found 108.6 grams of heroin, two scales with heroin residue and numerous empty sandwich bags hidden in a footstool in a bedroom in the apartment. *Id.* The police found no evidence linking the defendant to the apartment in their search, no evidence linking him to the contents of the footstool and no evidence linking him to either the person found in the apartment or the person named on mail found in the apartment. *Id.* As a result, we held that this evidence was insufficient to establish constructive possession of the heroin found in the apartment. In so holding, we highlighted the fact that the government only presented evidence that the defendant had been to the apartment on one occasion and had only been inside for five minutes. *Id.* at 233. In addition, there was no evidence showing that the defendant resided in or leased the apartment, kept any of his belonging there or had dominion or control over the residence based on his association with its occupants. *Id.* at 233–34. The only evidence presented to

9

establish constructive possession was that the defendant had a key to the apartment. *Id.* at 234.

But this case is distinguishable from *Blue*. Here, there is ample evidence from which a jury could conclude that Godette both knew about the heroin at the Kim Avenue apartment and had constructive possession of it. First, Hoover testified that she had sexual relations with Godette at the apartment on at least two occasions. Second, the apartment was leased to Godette's girlfriend, who lived with him on Foxhall Avenue. Also, the police officers found utility bills for the apartment in the vehicle Godette was driving when he was arrested. Finally, multiple law enforcement officers testified that they witnessed Godette, on multiple occasions, arrive at the apartment and use a key to retrieve heroin to give to Hoover to sell to the CI. These facts distinguish this case from *Blue* and provide sufficient evidence from which a jury could find that Godette constructively possessed the heroin seized at the Kim Avenue apartment. Thus, we reject Godette's argument that the evidence at trial was insufficient to support this conviction for Counts 1 and 6.

III.

Godette next argues that the district court erred in admitting into evidence undisclosed law enforcement expert testimony. Typically, we review evidentiary rulings for abuse of discretion. *See United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010). But because Godette failed to object to the testimony below, we review for plain error. To establish plain error, Godette must show (1) that an error occurred, (2) the error was plain; and (3) that the error affected his substantial rights. *United States v. Collins*, 982 F.3d 236,

10

241 (4th Cir. 2020). "Even where the first three requirements of plain error are met, the decision to correct the error is left to the discretion of the court of appeals 'and the court should not exercise that discretion unless the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Stitt*, 250 F.3d 878, 883 (4th Cir. 2001) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)).

Godette asserts that the district court plainly erred in permitting certain law enforcement testimony because the government failed to identify those individuals as experts as required under Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure. According to Godette, the government violated this provision when it "elicited opinion testimony from multiple law enforcement officers based on their 'experience' or 'training'" without giving prior notice that it intended to do so.[3] Op. Br. 34. The specific testimony complained of relates to the law enforcement officers providing the jury with a "'general picture of drug investigations.'" Op. Br. 19.

Rule 16(a)(1)(G) provides that "[a]t the defendant's request, the government must disclose to the defendant, in writing, [a written summary] of any testimony that the government intends to use at trial under Federal Rule of Evidence 702, 703 and 705 during its case-in-chief . . . ." Fed. R. Crim. P. 16(a)(1)(G). But Rule 16(a)(1)(G) only applies to expert testimony admitted under Rules 702, 703 and 705. It does not apply to lay testimony admitted under Rule 701. Under Rule 701, a lay witness may offer an opinion that is "rationally based on [his] perception." Fed. R. Evid. 701(a). "[I]f a witness's firsthand

---

[3] The law enforcement officers were not qualified as experts.

11

observations are common enough and require applying only a limited amount of expertise, they may fairly come in under Rule 701 as lay testimony." *United States v. Smith*, 962 F.3d 755, 767 (4th Cir. 2020) (cleaned up). And "experience-derived police testimony concerning criminals' typical modi operandi during a drug transaction may qualify as lay opinion under Rule 701." *Id.* (cleaned up) (collecting cases).

The officers' testimony about the general picture of drug transactions falls within the type of testimony permitted under Rule 701. Thus, the district court did not plainly err in permitting this testimony. Moreover, even assuming plain error, the government presented extensive evidence of Godette's role in the drug transactions that underlie his convictions. Against such evidence, Godette has not shown that permitting testimony about the general picture of drug transactions affected his substantial rights.

IV.

Finally, Godette argues that his 360-month sentence stemming from his convictions was procedurally and substantively unreasonable. And he contends that his 57-month revocation sentence consecutive to his 360-month sentence was plainly unreasonable.

We "review[] all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard." *United States v. Torres-Reyes*, 952 F.3d 147, 151 (4th Cir. 2020) (cleaned up). And we review the district court's factual findings for clear error. *United States v. Morehouse*, 34 F.4th 381, 387 (4th Cir. 2022). In evaluating procedural reasonableness, we must determine "whether the district court committed any procedural error, such as improperly calculating the

12

[Sentencing] Guidelines range, failing to consider the [18 U.S.C.] § 3553(a) factors, or failing to adequately explain the chosen sentence." *United States v. Nance*, 957 F.3d 204, 212 (4th Cir. 2010), *cert. denied*, 141 S. Ct. 687 (2020). "If [this court] finds no significant procedural error, it then considers the substantive reasonableness of the sentence imposed." *United States v. Arbaugh*, 951 F.3d 167, 172 (4th Cir. 2020) (cleaned up), *cert. denied*, 141 S. Ct. 382 (2020). In doing so, we consider "the totality of the circumstances to see whether the sentencing court abused its discretion in concluding that the sentence it chose satisfied the standards set forth in § 3553(a)." *Id.* at 176. We presume that a sentence within or below a defendant's advisory Guidelines range is substantively reasonable. *United States v. Gutierrez*, 963 F.3d 320, 344 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1431 (2021). This "presumption can only be rebutted by showing that the sentence is unreasonable when measured against the 18 U.S.C. § 3553(a) factors." *Id.*

## A.

Godette first challenges the district court's application of a two-level enhancement for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12). To determine whether a defendant "maintained" a premises, a court should consider "(A) whether the defendant held a possessory interest in (e.g., owned or rented) the premises and (B) the extent to which the defendant controlled access to, or activities at, the premises." § 2D1.1 cmt. n.17. "Manufacturing or distributing a controlled substance need not be the sole purpose for which the premises was maintained, but must be one of the defendant's primary or principal uses for the premises, rather than one of the defendant's incidental or collateral uses[.]" *Id.* "Maintaining" a premises

13

encompasses storing a controlled substance "for the purpose of distribution." *Id.* The sentencing court should consider "how frequently the premises was used by the defendant for manufacturing or distributing a controlled substance and how frequently the premises was used by the defendant for lawful purposes." *Id.*

The district court found that the drug-premise enhancement was supported by "overwhelming trial evidence." J.A. 684. "The Kim Avenue apartment . . . was a classic trap house . . . [I]t's clear that this is the whole point of the apartment, the evidence associated with the law enforcement observations of how Godette stored his heroin there, stored the [drug paraphernalia] . . . ." J.A. 684–85. The district court also gave great weight to Hoover's testimony at trial concerning Godette's access to and use of the apartment.

These findings are not clearly erroneous and are sufficient to support the application of the enhancement. Accordingly, the district court did not err in granting the premises enhancement.

B.

Godette next argues that his 360-month sentence is substantively unreasonable because it is greater than necessary to comply with the purposes of sentencing and that the district court failed to explain why it rejected his argument for a downward variance. We disagree. Since his sentence was within the Guidelines range—in fact, at the bottom of that range—it is presumptively reasonable. *Gutierrez*, 963 F.3d at 344. And the district court thoroughly addressed each of the § 3553(a) factors. In that analysis, the district court considered Godette's recidivism (including the fact that he was on supervised release for another conviction when he committed these offenses), the high volume of drugs involved

14

in the crimes, the fact that Godette struck a police officer with his vehicle as he attempted to avoid arrest and that he had physically abused Hoover in connection with his drug activity. Thus, we conclude that, when measured against the § 3553(a) factors, Godette's within-Guidelines range sentence was not substantively unreasonable.

And regarding the request for a downward variance, the court explained that granting it in this case would be "disrespectful to the law. And one of the [§] 3553(a) factors is that I'm to impose a sentence that will promote respect for the law." J.A. 703. We find no abuse of discretion in the district court's denial of Godette's motion for a downward variance.

## C.

Finally, Godette challenges his 57-month sentence for violating the condition of his supervised release for his previous conviction that he not engage in new criminal conduct. He claims the 360-month sentence was sufficient to carry out the purposes of criminal sentencing.

A sentence imposed upon revocation of supervised release that falls within the range authorized by statute is reviewable only if it is "plainly unreasonable." 18 U.S.C. § 3742(a)(4). The reasonableness of a revocation sentence is reviewed for abuse of discretion. *United States v. Davis*, 53 F.3d 638, 642–43 (4th Cir. 1995). Only if we find a revocation sentence unreasonable do we consider whether the sentence "is plainly so, relying on the definition of plain used in our plain error analysis—that is, clear or obvious." *United States v. Slappy*, 872 F.3d 202, 208 (4th Cir. 2017) (cleaned up). "If a revocation sentence—even an unreasonable one—is not 'plainly unreasonable,' we will affirm it." *Id.*

15

Godette's Guidelines range was 46 to 57 months, based on a grade A violation and a criminal history category of V. Thus, his 57-month sentence was within his Guidelines range. Also, it fell below the 60-month statutory maximum for the offense. After reviewing the record, we conclude Godette's revocation sentence was not unreasonable. Thus, we find no abuse of discretion in the district court's revocation sentence.

V.

For these reasons, we affirm. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*

16